294 P.2d 683

Gerald. JENSEN, Plaintiff and Respondent,

v.

Frank F. MOWER, Defendant and
Appellant.

No. 8369.

Supreme Court of Utah.

March 14, 1956.

Louis E. Midgley, Salt Lake City, for appellant.

L. Delos Daines, Salt Lake City, for respondent.

WORTHEN, Justice.

Plaintiff, who was riding with defendant, brought this action to recover damages sustained when he was thrown from defendant's automobile when defendant negligently drove his automobile against another vehicle.

Plaintiff and defendant were fellow employees at Hill Air Force Base and were en route to their employment at the time of the collision. The accident occurred about two miles north of the Farmington Underpass on U. S. Highway 91 in Davis County, Utah. The mishap occurred on the northbound portion of a divided highway separated by a barrow pit approximately 15 feet wide and from three to four feet deep. The northbound portion of the highway has a total width of 38 feet; it has two northbound traffic lanes; the east or outside lane is 22 feet wide and the west or inside lane is 12 feet wide. There is an additional four feet of highway left or west of the 12 foot lane and separated therefrom by a double line indicating no crossing. There is no shoulder adjacent to the barrow pit, which is separated from the 12 foot lane only by the four foot strip.

It is not disputed that at the scene of the accident the highway was coated with ice. There was testimony that the highway was

slippery from the Farmington Underpass to the place where the accident occurred. *It was dark and very foggy.* Defendant was traveling in the right traffic lane and collided with a car referred to as the Kenley car, which was stopped in the middle of the 22 foot traffic lane. The driver of the parked car had stopped to clear off his windshield "because I couldn't see where I was going."

It was established by defendant's testimony that he had carried riders in his car who were working at Hill Field. That some few days prior to the accident defendant had posted on the bulletin board at Hill Field a notice that he wanted riders from Salt Lake City. Respondent contacted appellant about riding with him and appellant advised respondent that he charged $3.50 per week of five days, and that respondent would be required to pay whether he rode or not, as long as the car went; that he charged what the bus charged; that respondent agreed to the terms stated and it was further agreed that respondent would pay every pay day.

Respondent testified that when he asked appellant how much * * * "he said 70¢ a ride and you pay whether you go or not as long as the car goes and I told him 'okeh.' " Mr. Gull, when asked how much he was to pay, answered, "I think it was 70¢ a round trip; $3.50 a week of five days."

On the day of the accident, February 2, 1954, appellant was carrying two other riders. Mr. Gull sat in the front seat to the right of appellant; Mr. Williams sat in the rear seat directly behind appellant and respondent sat behind Mr. Gull. Defendant testified that his speed from the underpass to the point where the accident occurred was between 30 and 35 miles per hour. He further testified that visibility was from 75 to 100 feet, "and with the lights on you could see further, but you couldn't distinguish objects very far." There was testimony that the visibility through appellant's windshield was limited when in vicinity of Farmington Underpass to an area of about one foot in diameter through its left side. The visibility through the side windows and the right side of the windshield became poorer as they proceeded north, and as the car fogged up shortly before they reached the Farmington Underpass, Mr. Williams asked appellant if he wasn't going too fast, and appellant said no. Immediately after they passed the underpass, Mr. Gull said that he couldn't see out of his side of the windshield and appellant said that he could and kept going.

There was considerable variance among the witnesses as to the density of the fog, the visibility, the condition of the highway, and the speed of the defendant.

Mr. Kenley testified that two cars went around him while he was stopped to clean off his windshield, and appellant offered testimony that two cars following him skidded. Defendant testified that immediately before the accident he was traveling at 30 to 35 miles per hour; that he observed

the tail lights of the Kenley car when it was 100 to 150 feet ahead; that at that point he couldn't tell whether or not the car was moving; that he was possibly 75 to 100 feet before he realized it was stopped; that he turned to the left and touched his brakes and the car went into a skid. There was testimony that defendant told a highway patrolman that when he saw a car in the roadway in front of him, he applied his brakes and went into a skid and skidded into the rear of the Kenley car and Jensen was thrown out.

The case was submitted to a jury and a verdict returned for plaintiff. The court denied defendant's motion for a new trial. Defendant contends (1) that the court erred in instructing the jury that, as a matter of law plaintiff was a paying passenger; (2) that the evidence establishes that plaintiff was contributorily negligent, as a matter of law, and that the verdict was against the clear weight of the evidence; and (3) that the court committed error in its instructions to the jury.

■ Defendant predicates error in the giving of Instruction No. 12 as follows:

"You are instructed that if you believe from a preponderance of the evidence that defendant, Frank Mower, knew or should have known that he was traveling on icy roads, then if you further find that a person under the circumstances of this case would not, as a reasonable and prudent man, have ap-

plied his brakes, then you shall find that in so doing he was negligent."

Defendant objects that said instruction took away from the jury the question as to whether or not defendant actually applied his brakes, and if applied, whether they were applied before or after the car started skidding.

We have set out herein a statement made by defendant while testifying and the statement that he made to the highway patrolman as reported by the officer. At no time during the trial did defendant deny that he applied or touched his brakes. In appellant's brief under "Statement of Facts" is this statement:

"The defendant turned his car to the left and applied his brakes to slow down but not to stop."

Appellant further said in answer to a question on cross examination,

"Q. Now how fast were you going, Mr. Mower, when your car and the Kenley car came together? A. Well, I imagine I was going about the same speed as I was when I touched my brakes * * *."

Appellant testified that he knew that there was no traffic coming from the north and that he had from 14 to 24 feet to pass on the left of the Kenley car.

Appellant contends that Instruction No. 12 assumes that defendant applied his brakes before the car started skidding. Appellant answered the following question:

"Q. After you went into a skid what did you try to do to bring it out? A. I don't think nothing I could do except sit there and wait to see where I went."

We are of the opinion that there is no evidence that appellant did not apply his brakes. The court instructed the jury that if it found that a reasonable and prudent man, under the circumstances, would not have applied the brakes, they should find defendant negligent in so doing. We believe that no error was committed in Instruction No. 12.

■ We shall not burden this opinion with a discussion of the other instructions given of which complaint is made. The court instructed the jury as to negligence, proximate cause and contributory negligence. We do not perceive wherein the court failed to properly instruct the jury. Nor do we find evidence sufficient to require the court to hold plaintiff guilty of contributory negligence as a matter of law. The evidence set out at the beginning of this opinion, we believe, disposes of this complaint. There was not presented a situation requiring positive action or protest from plaintiff. The jury by its verdict found respondent free from contributory negligence.

The remaining question, and the one most extensively argued by defendant, with which we are primarily concerned is this: Was plaintiff a guest under the provisions of § 41–9–2, U.C.A.1953?

There is no suggestion by the plaintiff or the trial court, nor will the evidence justify a finding that defendant was guilty of either (a) intoxication, or (b) wilful misconduct. Therefore, defendant would not be liable to plaintiff for the injuries sustained were plaintiff a guest in defendant's car.

Section 41–9–1, U.C.A.1953, provides:

"Any person who as a guest accepts a ride in any vehicle, moving upon any of the public highways of the state of Utah, and while so riding as such guest receives or sustains an injury, shall have no right of recovery against the owner or driver or person responsible for the operation of such vehicle. * * * Nothing in this section shall be construed as relieving the owner or driver * * * from liability for injury to * * * such guest proximately resulting from the intoxication or wilful misconduct of such owner, driver * * *."

■ It is neither suggested in defendant's brief, nor urged in argument that there was not sufficient evidence of negligence on defendant's part to sustain the verdict and judgment if plaintiff was a paying passenger. Plaintiff having prevailed at the trial, we must consider the evidence and every reasonable inference in the light most favorable to plaintiff. Section 41–9–2, U.C.A.1953, provides:

"For the purpose of this section the term 'guest' is hereby defined as being

a person who accepts a ride in any vehicle without giving compensation therefor."

Although our guest statute was enacted over 20 years ago, this court has never been called upon to decide the question whether under certain facts a rider is a guest of the motorist or a passenger giving compensation.

Respondent contends that the facts which we have set out disclose that he was a passenger giving compensation for his ride. Appellant contends that since it is not shown that the amount to be paid by respondent was equal to or more than what it cost appellant to transport respondent, he was not giving compensation for his ride and was, therefore, a guest and not entitled to recover against appellant for ordinary negligence.

We are of the opinion that it was not the intention of the Legislature to have the status of a rider as to being a guest or passenger determined by any such nice distinction as suggested by appellant. The formula would depend on too many factors, such as (1) the number of riders, (2) the type of car, (3) the miles per gallon of gasoline, etc. Thus, a single passenger riding would probably never pay the necessary amount to make the driver whole. On the other hand, many riders in one car would pay only a small fraction of what would be required of one or two riders. It cannot be contended that every rider of a bus or taxicab pays his full proportion of what is required to completely make the operator whole.

Particularly do we believe that under the facts of this case the respondent gave compensation as contemplated by the statute. The appellant declared the rate the same as the bus rate, with the proviso that the fare be paid if the car went whether or not respondent rode.

It is our opinion that in the adoption of this statute the Legislature sought to relieve the hardship which is visited upon a generous driver who is sued by an invited rider for ordinary negligence of the driver when the rider gave nothing to compensate the driver for the transportation.

In the case of Crawford v. Foster [1] the California Court at page 843 of 293 P. declared the legislative purpose in the enactment of the guest statute as follows:

"The purpose and object that the Legislature had in mind sometimes throws light upon the meaning of the language used. The situation that this section was apparently designed to prevent is well known. As the use of automobiles became almost universal, the proverbial ingratitude of the dog that bites the hand that feeds him, found a counterpart in the many cases that arose, where generous drivers, having offered rides to guests, later found themselves defendants in cases that

I. 110 Cal.App. 81, 293 P. 841.

often turned upon close questions of negligence. Undoubtedly, the Legislature, in adopting this act, reflected a certain natural feeling as to the injustice of such a situation. Neither this feeling nor the reasons therefor apply to a situation arising out of an ordinary business transaction, * * *."

In this case appellant did not offer to give respondent transportation from Salt Lake City to Hill Field as his guest. Appellant made it crystal clear that if respondent rode with him that it would be on the terms named by appellant for the price he named and if respondent didn't like it he knew what he could do.

It is not necessary for us to discuss the numerous cases with varying fact situations discussed by counsel. We are here confronted by facts quite different from those in most of the cases referred to. We are not here concerned with the share the ride case, the car pool case, nor the cases involving contribution to the expense. Here defendant advertised for riders; plaintiff was interested in securing transportation; the price was quoted by defendant and plaintiff agreed to the price demanded. He was not a guest—but was a passenger who was induced to ride with defendant on the terms stated. He was taken out of the guest classification by the compensation which he agreed to meet.

We know of no reason why this driver who quoted a price not less than the bus fare, and induced a rider to take passage, and who injured the rider through his negligence, should be permitted to exonerate himself by pleading that he didn't charge enough.

The following statement appears in 5 Am.Jur.—1955 Cumulative Supplement, Automobiles, page 109, § 239:

"Thus, where, in pursuance of a contract between the parties, the occupant of an automobile makes a cash payment to the owner or operator, in consideration of which he is transported, it seems clear that he is a passenger for hire rather than a guest, under the terms of the guest statutes, so that he is entitled to at least the exercise of ordinary care for his safety. It has been so held under the statutes which use the term 'payment' in defining the status of a passenger for hire. However the mere fact that the owner or operator of the car receives money as a result of carrying the plaintiff does not necessarily entitle the plaintiff to the status of passenger for hire, if the money is not received as compensation or payment for the transportation, and the transportation was not induced by the expectation of such cash payment."

Guest statutes have been the subject of much litigation during the past 25 or 30 years. The statutes differ in the different jurisdictions and the interpretation of the statutes vary with the varying fact situations.

As indicated in the language quoted from Am.Jur. the cases turn not on whether money is received or paid as a result of carrying the rider, but upon the fact that the money or other consideration was given to the driver, not as a gratuity or in appreciation *but rather* as an inducement for making the trip for the rider or furnishing carriage for the ride. If the driver extends the courtesy of a ride to a friend without more or takes on a hiker overtaken on the highway, the status of guest in either case is not replaced by that of passenger if gas is purchased, meals purchased or cash given to assist the driver in meeting the expenses of the trip. Such rider is not in the car because of any compensation or payment which induced the driver to give the ride. That the driver had already done.

The Kansas statute [2] provides:

"That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages * * * unless such injury * * * shall have resulted from the gross and wanton negligence * * *."

The Kansas court in the case of Ward v. Dwyer [3] had before it a case where plaintiff's petition alleged that plaintiff was a pay passenger riding with other pay passengers in defendant's automobile. That she and the other passengers were each paying $2 per week for the transportation. The trial court held that plaintiff's amended petition did not state facts sufficient to constitute a cause of action against defendant and did show plaintiff was a guest within the meaning of the guest statute and entered judgment for defendant. In reversing the lower court the Kansas Supreme Court said:

"Defendant argues that since it appears from the allegations of the petition that he would have made the trip anyway even had plaintiff not paid the $2 a week, she was a guest. To sustain this position he cites and relies on Pilcher v. Erny, 155 Kan. 257, 124 P.2d 461, 464. There in discussing a guest case we said:

" 'The intention was, however, that the exception should apply only where the payment was the chief motivating cause for the trip or carriage.'

He argues the effect to be given this statement should be considered as though the words 'or carriage' were not used. Here it is clear the chief motivating cause of the carriage of the plaintiff was the payment by her of $2 a week. See Shanks v. Gilkinson, 177 Kan. 225, 277 P.2d 594. The question is not whether defendant would have made the trip regardless of the payment. It seems clear she alleged a situation where the only reasonable conclusion is that she *would not have*

2. G.S.1949, 8–122b.

3. 1954, 177 Kan. 212, 277 P.2d 644, 648.

*been in the plaintiff's car* had it not been for the payment. * * * " (Emphasis ours.)

Our guest statute is substantially the same as the California statute,[4] which reads:

"No person who as a guest accepts a ride in any vehicle upon a highway *without giving* compensation for such ride * * * has any right of action for civil damages against the driver of such vehicle * * * unless the plaintiff in any such action establishes that such injury or death proximately resulted from the intoxication or wilful misconduct of said driver." (Emphasis added.)

In the leading case of Whitmore v. French,[5] the California Supreme Court used this language:

"The designations 'passenger' and 'guest' have been adopted for the purpose of distinguishing a person who has given compensation within the meaning of section 403 of the Vehicle Code from one carried gratuitously. Kruzic v. Sanders, 23 Cal.2d 237, 241, 143 P.2d 704. A person who accepts a ride does not cease to be guest and become a passenger merely by extending customary courtesies of the road, such as paying bridge or ferry tolls (see Rest., Torts, § 490, Comment a), and it has been held that the sharing of expenses does not destroy the host and guest relationship if nothing more

is involved than the exchange of social amenities and reciprocal hospitality. McCann v. Hoffman, 9 Cal.2d 279, 70 P.2d 909. *Where*, however, the driver receives a *tangible benefit, monetary or otherwise*, which is a motivating influence for furnishing the transportation, *the rider is a passenger* and the driver is liable for *ordinary negligence*. (Citing cases.)" (Emphasis added.)

Affirmed. Costs to respondent.

McDONOUGH, C. J., and CROCKETT, HENRIOD and WADE, JJ., concur.

---

4. Sec. 403, California Vehicle Code.

5. 37 Cal.2d 744, 235 P.2d 3, 5.