517 P.2d 1010

**Thelma B. STANTON, Plaintiff and Appellant,**

v.

**James Lawrence STANTON, Jr., Defendant and Respondent.**

**No. 13362.**

Supreme Court of Utah.

Jan. 4, 1974.

---

1. 5A C.J.S. Appeal and Error § 1619e.

Bryce E. Roe, of Roe & Fowler, Salt Lake City, for plaintiff and appellant.

D. Gary Christian, of Kipp & Christian, Salt Lake City, for defendant and respondent.

CROCKETT, Justice:

The main issue presented on this appeal is plaintiff's attack on the constitutionality of Section 15–2–1, U.C.A.1953:

> The period of minority extends in males to the age of 21 years and in females to that of 18 years; but all minors obtain their majority by marriage.

She contends that making the age of majority lower for women than for men is discriminatory, and denies equal protection of the laws.[1]

After nine years of marriage, and the birth of two children, Sherri, born February 12, 1953, and Rick, born January 29, 1955, the parties were divorced and the decree required the defendant to pay $100 per month alimony and $100 per month for the support of each child. It is not disputed that he made these payments until February 1971, at which time he ceased paying for Sherri because she had reached the age of 18. In supplemental proceedings the plaintiff sought judgment for support payments for Sherri accruing since that time. From an adverse ruling, she appeals. The trial court ruled in accordance with the assumption since time immemorial in our law that our statutes dealing with the support of "children" meant during the period of minority[2] and denied her petition. She appeals.

In considering plaintiff's charge that the statute just quoted is unconstitutional there are some general principles to be applied. Due to the important concept of separation of powers in our government, the courts should defer to the prerogative of the legislature to make the laws, and confine their own actions to interpreting and applying them. This, of course, does not negate their responsibility of determining an act to be invalid if there is a clear and irreconcilable conflict between it and the Constitution, which is the supreme and controlling law.[3] But the courts are in a peculiar and somewhat delicate position because it falls to their lot to decide whether such conflict exists, and there is always

1. Utah constitution, Art. I, Secs. 7 and 24; and Art. IV, Sec. 1; and also U. S. Constitution, Amend. XIV.

2. See Secs. 30–3–5, U.C.A.1953, support and custody of children in divorce cases; 30–2–10, cases of abandonment; 30–3–10, cases of separation; and 30–4–3, separate maintenance.

3. See Allen v. Rampton, 23 Utah 2d 336, 463 P.2d 7, and authorities therein cited.

the danger of trespassing upon the legislative domain. For this reason, and in order to maintain and safeguard the balance of power so essential to our system of government, we think it is correct and desirable to adhere to a policy of caution and restraint in respect for the action of the legislature; and not strike down a statute unless it appears so clear that it is beyond a reasonable doubt that there is such irreconcilable conflict.[4]

It is also worthy of mention that this should be more true as to acts of a state legislature, which acts as representatives of a sovereign state, and thus has inherently all of the powers of sovereignty, except as otherwise specified or limited by the state constitution, as contrasted to the federal government which has only those powers expressly granted, with all others reserved to the states or to the people. See the language of Amendments IX and X, U. S. Constitution.

█ There is no doubt that the questioned statute treats men and women differently. But there is likewise no question but it may treat people differently, based on classification, so long as there is a reasonable basis for the classification, which is related to the purposes of the act, and it applies equally and uniformly to all persons within the class.[5] The plaintiff's argument is that, notwithstanding the foregoing, there is no sound reason for differentiation between the sexes as to the termination of the right of support. She asserts that whatever basis there may have been in former days for continuing the support of boys for the extra three years, because of the liberalization process in which women have become more involved in all affairs of the world outside the home, that basis no longer exists.

We are aware that both society in general and interfamily relationships have been undergoing change, as they undoubtedly should. We do not desire to be understood as opposing change simply because it is different; and we wholly agree that an essential aspect of the vitality of the law is that it should change to meet changing conditions. But neither of those propositions provide the answer to the problem here.

It may be that our ancestors for generations before us have been misguided in their belief that there are some fundamental differences between the sexes. But it is remarkable how some of those old notions do continue to prevail as to numerous interesting differences. Included among them is the belief held by many that generally it is the man's primary responsibility to provide a home and its essentials for the

4. Newcomb v. Ogden City Pub. School Teachers' Retirement Commission, 121 Utah 503, 243 P.2d 941 (1952).

5. State v. Mason, 94 Utah 501, 78 P.2d 920, 117 A.L.R. 330; Slater v. Salt Lake City, 115 Utah 476, 206 P.2d 153, 9 A.L.R.2d 712.

family; and that however many exceptions and whatever necessary and proper variations therefrom may exist in differing circumstances, it is a salutary thing for him to get a good education and/or training before he undertakes those responsibilities.

Perhaps more important than this, there is another widely accepted idea: that girls tend generally to mature physically, emotionally and mentally before boys, and that they generally tend to marry earlier.[6] We realize that as a court made up of men, there is a possibility of masculine bias, which we should endeavor to guard against in considering matters of this character. But we do not regard it as our judicial function to pass upon the soundness or the unsoundness of the ideas just mentioned above. What we do note is our knowledge of their existence; and that they have played an essential role in the history of the development of the law as declared in the statute under attack.

Should it be deemed the prerogative of the court to initiate a change in the age at which the parental duty of support terminates, it would be appropriate to reflect upon another aspect of the problem: that is, how would the shoe fit on the other foot? Assume that we would take judicial cognizance of the trend in the differing role of women, perhaps we should similarly notice the trend toward the earlier emancipation and fuller freedom of conduct of minors; and that this applies to both boys and girls. One indication of this is the recent reduction of the age for voting to 18.[7] From this it could be argued with equal logic that instead of extending the defendant's duty of supporting Sherri to 21, he should be relieved of the duty of supporting the son Rick (age 16) when he reaches 18. Thus in a contest between the plaintiff and the defendant as to the support of these children, there would be a net loss to the plaintiff.

On the basis of what has been said above we make these observations: that there are various factors which should be considered in formulating the policy of the law as to when the duty to support children should terminate; that the opposing contentions with respect to the merits of plaintiff's proposal are matters upon which reasonable minds might entertain different opinions; that due to those facts, combined with the long existence and application of this statute in harmony with our constitutional provisions, it is our judgment that there is no basis upon which we would be justified in concluding that the statute is so beyond a reasonable doubt in conflict with constitutional provisions that it should be striken down as invalid.

6. See a good statement on this by Justice Dailey in Jacobson v. Lenhart, 30 Ill.2d 225, 195 N.E.2d 638.

7. See Sec. 20–2–11.1, U.C.A.1953; and Federal Voting Rights Act Amendments of 1970, Public Law 91–285.

We think this case and the proposal under consideration provide a very good example of why the courts should not initiate a change in the law as advocated by the plaintiff. If such a change is desirable, that is a matter which should commend itself to the attention of the legislature.[8] Then the proposal would be subject to public scrutiny and debate, and action be taken thereon by the representatives of the people, rather than to have a change result from a controversy between private individuals. There is the further advantage that if such a change is made legislatively, everyone could know the time, the manner and the extent of the change; and the legislature in the exercise of its wisdom and prerogative, could also provide how the new law would affect the thousands of divorce decrees already entered and under which such problems might arise, including the possible ex post facto, current, and prospective effects.

■■ There is an adjunctive minor issue in this case: defendant contends that the son Rick lived with him for about three months and that he is therefore entitled to a credit of $300 for Rick's support during that time. The general rule is that the decree fixes the obligations of the parties; and that they cannot modify it or change their obligations by their conduct.[9] Otherwise sometimes interfamily tensions and machinations could make a shambles of determining and enforcing the rights and duties of the parties.

■■ In the absence of any modification of the decree, the support money accrued in accordance with its terms; and it was not the prerogative of the defendant to unilaterally decide that he would not pay the support money and offset it by favors conferred upon the children. However, in matters concerning the custody and support of children, because of their highly equitable nature, it is appropriate for the trial court to take into consideration the entire circumstances in making any order of enforcement of the decree, by contempt or otherwise, having in mind his equitable powers, to make any adjustment he may think fair and justified.

■ Nevertheless, upon the basis of the decree, and the record before us, the plaintiff is entitled to judgment for the $300 accrued support money for the son Rick, and to a continuance thereof during his minority unless otherwise properly determined and ordered by the district court. Except as to this last item, the judgment is af-

---

8. That majority or minority is a status and that is the prerogative of the legislature to fix and change the age of majority, see in re Morrissey, 137 U.S. 157, 11 S.Ct. 57, 34 L.Ed. 644; and Springstun v. Springstun, 131 Wash. 109, 229 P. 14, 40 A.L.R. 595; 27 Am.Jur. 748, Sec. 5.

9. See Harris v. Harris, 14 Utah 2d 96, 377 P.2d 1007, Marks v. Marks, 98 Utah 400, 100 P.2d 207.

firmed. The parties to bear their own costs.

CALLISTER, C. J., TUCKETT and HENRIOD, JJ., and JOSEPH E. NELSON, District Judge, concur.

ELLETT, J., having disqualified himself, does not participate herein.