Jacki CANNON, Plaintiff and Appellant,

v.

Paula OVIATT et al., Defendants and Respondent.

Eugene W. MARTIN, Guardian ad litem for Jackie A. Martin, a minor, Plaintiff and Appellant,

v.

Jay G. JACKSON and Harold C. Russell, Defendants and Respondents.

Nos. 13366, 13379.

Supreme Court of Utah.

March 26, 1974.

---

1. Earll v. McCoy, 116 Cal.App.2d 44, 253 P.2d 86 (1953); Sec. 438 Restatement of Agency 2d.

Anthony M. Thurber, Salt Lake City, for Cannon.

Curtis K. Oberhansley and Stephen W. Cook, of Kinghorn, Oberhansly & O'Connell, Salt Lake City, for Martin.

D. Gary Christian and Steven H. Gunn, of Kipp & Christian, Salt Lake City, for Oviatt.

Don J. Hanson, Salt Lake City, for Helsley, Moffat and Moffat.

David E. West, of Armstrong, Rawlings, West & Schaerrer, Salt Lake City, for Jackson and Russell.

CALLISTER, Chief Justice:

The appeals of the plaintiffs, which arose out of separate and unrelated actions, have been consolidated since they involved one common question of law, namely, was Section 41–9–1, U.C.A.1953, unconstitutional? Each plaintiff, while a guest in a motor vehicle, moving upon a public highway in this state, sustained personal injuries in a vehicular accident. Each plaintiff initiated an action against his host, the driver of the vehicle, to recover damages for the negligent operation of the vehicle. Each host asserted Section 41–9–1, U.C.A. 1953, as a defense and denied liability. Each plaintiff urged unsuccessfully before the trial court that the Guest Statute, 41–9–1, U.C.A. 1953, denied him equal protection of the law under the Constitution of the United States (14th Amendment) and the Constitution of Utah (Article I, Section 24).

On appeal each plaintiff relies on the reasoning set forth in Brown v. Merlo,[1] wherein the Supreme Court of California held that the proffered justification for that jurisdiction's guest statute did not constitute a rational basis for the differential treatment accorded by the statutory

1. 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973).

scheme of classification and was therefore a denial of equal protection of the law. The Brown decision set forth two distinct justifications for the statute, the protection of hospitality and the prevention of collusive lawsuits. The court found the protection of hospitality rationale fatally defective on the grounds: (1) It failed to explain why the statute accorded differential treatment to automobile guests as distinguished from other guests. (2) In light of recent developments in comparable legal doctrines, the interest in protecting hospitality could not rationally justify the withdrawal of legal protection from guests. (3) It ignored the prevalence of liability insurance coverage today, which undermines any alleged rational connection between prevention of lawsuits and the protection of hospitality. The prevention of collusive lawsuits rationale was determined defective as overinclusive, since it barred valid suits along with the fraudulent claims. The court further found that the classification was aggravated by a series of limiting loopholes, which stayed the operation of the statute under a variety of diverse and illogical circumstances. The court explained that the numerous exceptions produced an absurd and illogical pattern which eliminated any rationality which might conceivably be claimed for the statute.

The California court stated that the statute established three distinct levels of classification: (1) The act treated automobile guests differently from paying passengers. (2) It treated automobile guests differently from other social guests and recipients of generosity and withdrew from auto guests the protection from negligently inflicted injuries generally enjoyed by a guest in other contexts. (3) The act distinguished between subclasses of auto guests, withholding recovery from guests injured while "in a vehicle" "during a ride" "upon a public highway" but permitted recovery by the guest injured under other circumstances. According to the court, the rationality of the tripartite classification scheme must be evaluated in the light of the purposes of the legislation. No other case had adjudicated the constitutional issue on this basis.

The court stated that the hospitality justification provided an inadequate explanation for the differential treatment accorded to automobile guests as distinguished from other guests. Under California law, guests or recipients of hospitality may generally demand that their hosts exercise due care so as not to injure them.[2] In a footnote[3] the court explained that in 1929, the time of enactment, the guest statute had a closer relationship to general tort doctrine, since at that time property owners owed a duty of ordinary care only to invitees (business visitors) and owed only some lesser duty of care to licensees (social guests). Presently, in California, the general duty of ordinary care governs a landowner's duty to all those injured on his property, social guests and business visitors alike. Since the general tort doctrine has been modified, the guest statute singles automobile guests for a special burden and thus creates an arbitrary and unreasonable classification. The court reasoned that no realistic state purpose supported the classification scheme of the statute, since persons situated with respect to the purpose of the law (recipients of hospitality) do not receive like treatment.

The court stated that the statutory purpose of fostering hospitality cannot rationally justify the lowering of protection for one class, namely, automobile guests as distinguished from paying passengers. The court relied on Rowland v. Christian[4] and stated that just as it was unreasonable to lower the standard of care to a visitor on private property because he was a social guest rather than a "paying" invitee, it was unreasonable to single out an automobile

2. Rowland v. Christian, 69 Cal.2d 108, 70 Cal. Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496 (1968).

3. No. 6 at p. 395 of 106 Cal.Rptr., no. 6 at p. 219 of 506 P.2d.

4. Note 2, supra.

guest and expose him to greater danger from negligence than a paying passenger. The fact that the guest paid nothing did not provide a reason to excuse the negligence of the host.

The court further explained that the characterization of the guest's lawsuit as an act of ingratitude had been completely eroded by the development of almost universal automobile liability insurance coverage in recent years. Today, the insurance company and not the generous host, was the recipient of the protection of the guest statute. The court was of the opinion that the elimination of the guest doctrine would in most cases shift the burden of loss from the injured individual to the motoring public rather than to the negligent host personally. The court concluded that the discriminatory treatment of automobile guests could not be upheld against the constitutional attack on the basis of the hospitality justification.

Brown v. Merlo [5] is a logical consequence in that jurisdiction stemming from their prior determination to abandon the traditional tort doctrine that the status of a person determined the duty owed to him. In this jurisdiction the distinction between "invitees" or "business visitors" and "licensees" or "social guests" has been preserved.[6] Thus the classification of an automobile guest in Section 41–9–1, U.C.A. 1953, does not single out this one group for treatment different than accorded to other guests. Likewise, the distinction between a paying passenger and an automobile guest has been retained in the correlative distinctions between an invitee and licensee. Thus, in this jurisdiction an automobile guest has not been isolated from all other guests and recipients of generosity and alone denied a duty of due care by his host.

As previously noted, the court in Brown v. Merlo [7] relied extensively on Rowland v. Christian [8] to prove the invalidity of the hospitality justification for the guest statute. This case is cited in 32 A.L.R.3d 513, as part of the general trend in the field of tort laws to eliminate technical status positions, which had the effect of insulating certain classes from liability. In an explanatory footnote,[9] it is stated:

This movement is probably a result of a general shift in the theory of tort law from the emphasis on the regulation of rights between individuals on the basis of relative fault toward a viewpoint which regards *tort law as a device for social engineering,* primarily concerned with allocation of liability in such a manner as to most satisfactorily protect the social fabric from the impact of such injuries as are a necessary or probable consequence of the complicated organization of society. [Emphasis added.]

Brown v. Merlo, in effect, elevated this device for social engineering to the level of a constitutional doctrine. First, by this device as utilized in Rowland v. Christian, the traditional distinction between invitees and licensees was nullified, resulting in the automobile guest alone being denied the duty of ordinary care by his host. Secondly, to nullify the hospitality justification, the court directly incorporated the underlying rationale of social engineering, namely that there should be an allocation of liability so as to protect the society from the impact of such injuries. The court stated that the widespread use of liability insurance shifted all or part of the burden of loss from the injured individual to the motoring public. Through this process of social engineering a legislative enactment in the area of economics and social welfare was thrust into conflict with the modified

---

5. Note 1, supra.

6. Stevens v. Salt Lake County, 25 Utah 2d 168, 478 P.2d 496 (1970) ; Wood v. Wood, 8 Utah 2d 279, 333 P.2d 630 (1959) ; Tempest v. Richardson, 5 Utah 2d 174, 299 P.2d 124 (1956) ; Hayward v. Downing, 112 Utah 508, 189 P.2d 442 (1948).

7. Note 1, supra.

8. Note 2, supra.

9. Footnote 3, p. 513 of 32 A.L.R.3d.

tort doctrine promulgated by the court. The court was of the opinion that the statutory classification caused discriminatory treatment to automobile guests and violated the equal protection guarantees of the California and United States Constitutions.

In evaluating the determination of the California court that the statute was unconstitutional, there are two decisions of the United States Supreme Court that support an opposite conclusion.

In Silver v. Silver,[10] the Connecticut guest statute was claimed to deny equal protection of the law on the ground that it distinguished between gratuitous passengers in automobiles and those in other classes of vehicles. The court responded:[11]

The use of the automobile as an instrument of transportation is peculiarly the subject of regulation. We cannot assume that there are no evils to be corrected or permissible social objects to be gained by the present statute. We are not unaware of the increasing frequency of litigation in which passengers carried gratuitously in automobiles, often casual guests or licensees, have sought the recovery of large sums for injuries alleged to have been due to negligent operation . . . . Whether there has been serious increase in the evils of vexatious litigation in this class of cases, where the carriage is by automobile, is for legislative determination and, if found, may well be the basis of legislative action further restricting the liability. Its wisdom is not the concern of courts.

In regard to the alleged discriminatory classification, the court stated:[12]

. . . there is no constitutional requirement that a regulation, in other respects permissible, must reach every class to which it might be applied—that the legislature must be held rigidly to the choice of regulating all or none. [Citations] In this day of almost universal highway transportation by motor car, we cannot say that abuses originating in the multiplicity of suits growing out of the gratuitous carriage of passengers in automobiles do not present so conspicuous an example of what the legislature may regard as an evil, as to justify legislation aimed at it, even though some abuses may not be hit. [Citations] It is enough that the present statute strikes at the evil where it is felt, and reaches the class of cases where it most frequently occurs.

A similar interpretation has been recently set forth in Dandridge v. Williams,[13] wherein the court stated:

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." [Citation] "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." [Citation] "A statutory discrimination will not be set aside if any state of facts may be conceived to justify it." [Citation]

\* \* \* \* \* \*

. . . But the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all. [Citation] It is enough that the State's action be rationally based and free from invidious discrimination . . . .

10. 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929).

11. At pp. 122–123 of 280 U.S., at p. 58 of 50 S.Ct.

12. At pp. 123–124 of 280 U.S., at p. 59 of 50 S.Ct.

13. 397 U.S. 471, 485, 486–487, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

The use of the motor vehicle upon the public highways has been validly subjected to legislative regulation. The presence of the guest in this area would itself create a basis for a distinct classification from other guests located where there was no overwhelming public interest. The motor vehicle exerts a dominant influence in contemporary society and its use creates many economic and social problems. In a state such as Utah a significant portion of our economic resources must be devoted to the construction and maintenance of highways; the economic burden bears a direct relationship to the number of vehicles and the total cumulative mileage on the highways each year. The guest statute encourages hospitality and directly affects the number of vehicles present on the highways, thus avoiding traffic congestion and wear to the surfaces of the roadway. The guest statute promotes the conservation of petroleum and other natural resources consumed in highway travel. The suggestion that the burden of the injured guest should be borne by the motoring public through liability insurance is an economic and social solution that is properly subject to legislative determination. The Legislature is the proper forum to consider the alternative solutions for the problem of the injured guest. The No Fault Insurance Act, 31–41–1 et seq., U.C.A. 1953, provides a compromise, the guest receives limited compensation for injuries, while hospitality is encouraged by not exposing the host to unlimited liability and staggering insurance rates. The suggested simplistic solution that the motoring public should bear the costs of the injured guests ignores the economic consequence that increased claims will be reflected in increased insurance rates, creating an economic hardship on the generous host and chilling hospitality.

Section 41–9–1, U.C.A. 1953, was enacted to provide some protection to a generous host, who is sued by his invited guest for ordinary negligence, when the rider has given no compensation as an inducement for making the trip or furnishing the carriage for the rider.[14] This act subserved a valid legislative purpose to encourage hospitality in the use of the public highways. Furthermore, the automobile guest in this jurisdiction is not placed in a distinct classification, where he alone as a recipient of generosity is deprived of the duty of due care by his host.

In Brown v. Merlo [15] the court stated that the second justification for the guest statute was the prevention of collusive lawsuits. The classification in the statute was allegedly predicated on the concept that a driver who gave a free ride to a passenger was motivated by his close relationship with his guest, and the driver might admit liability to assist the guest in collecting from the insurance company. The court rejected this rationale on the ground that though prior caselaw intrafamily tort immunity had been rejected. The court cited Klein v. Klein [16] wherein it rejected a claim that the possibility of fraudulent lawsuits between a husband and wife served as a sufficient justification to bar all interspousal negligence actions. In Rubalcava v. Gisseman,[17] this court held that a wife may not maintain a tort action against her husband or his estate. This court declined to follow Klein v. Klein and stated that the legislature and not this court was the proper forum to change this rule. Thus in Utah the guest statute does not create a distinct classification for automobile guests as compared to others insofar as collusive lawsuits are concerned.

The court stated in Brown v. Merlo [18] that the numerous statutory exceptions had rendered recovery or lack of recovery un-

---

14. Jensen v. Mower, 4 Utah 2d 336, 294 P. 2d 683 (1956).

15. Note 1, supra.

16. 58 Cal.2d 692, 26 Cal.Rptr. 102, 376 P.2d 70 (1962).

17. 14 Utah 2d 344, 384 P.2d 389 (1963).

18. Note 1, supra.

der the guest statute largely fortuitous and added another element of irrationality to the statutory scheme. The court explained that the relationship giving rise to liability between the driver and occupant might fluctuate during the course of a single ride, as circumstances brought them within and without the language of the statute. The court observed that the statute distinguished guests on the basis of (1) whether or not the journey had come to a momentary halt; (2) whether the guest was physically located inside or outside the car; (3) whether the car was on a public highway or private land. The court found that these statutory exceptions operated so illogically as to cause serious inequality and that they did not bear the remotest relation to either the objective of protecting hospitality or preventing collusive lawsuits. The court concluded that under these circumstances, the limiting provisions of the statute constituted further denial of equal protection.

In Andrus v. Allred,[19] this court stated that Section 41–9–1, U.C.A.1953, should be given a sufficiently practical and reasonable application to cover incidents which occur as an integral part of the ride. This court declined to give the statute such a narrow and literal interpretation as to eliminate incidents which might occur while the vehicle was stopped, however briefly and for any purpose. This court stated:[20]

> It is our opinion that a sensible and realistic application of this statute, in conformity with its objective, requires that the protection extend over the entire host-guest relationship in connection with the giving and taking of the ride. . . . the host-guest relationship here must also include getting into the car at the beginning and getting out of it when the ride is completed and any incidents

which happen in the course of and arising out of the ride . . . ..

■■■■ The interpretation of the guest statute by this court has averted the alleged irrationality in the statutory classification which disturbed the court in Brown v. Merlo. Furthermore, the Equal Protection Clause does not compel the State to attack every aspect of a problem or to refrain from any action at all; it is sufficient that the State's action be rationally based and free from invidious discrimination.[21]

The rulings of the trial courts in these actions sustaining the constitutionality of Section 41–9–1, U.C.A. 1953, are affirmed. Costs are awarded to defendants.

ELLETT and TUCKETT, JJ., concur.

HENRIOD, Justice (concurring).

I concur, except to say that I can see no relevancy whatever in the case of Andrus v. Allred, cited in the opinion, as to the facts or problems involved in the instant case.

CROCKETT, Justice (concurring specially).

I am impelled to forswear joining in expatiation upon a case of a sister state, which we decline to follow anyway. In addition to not being binding on us in any event, it is decided against a background of law significantly different from our own, and it impresses me as mainly concerned with rationalizations toward a desired result of repudiating their statute.

Consequently, I desire to state briefly my own reasons for refusing to strike down our own:

(1) Our guest statute was enacted by the legislature advisedly, to alleviate actual abuses which had occurred, and were occurring.[1]

---

19. 17 Utah 2d 106, 404 P.2d 972 (1965).

20. At p. 110 of 17 Utah 2d, at p. 974 of 404 P.2d.

21. Dandridge v. Williams, note 13, supra.

1. See discussion of justification of this statute based on the use of automobiles as such an essential and important aspect of modern living that it is an appropriate subject for special classification and legislation thereon, and

(2) Although it has not completely cured the ills it was aimed at, when properly applied, it has had the salutary effect of minimizing them.

(3) It has been in effect for over 40 years.[2]

the salutary purposes justifying the statute as set forth by Justice Worthen in Jensen v. Mower, 4 Utah 2d 336, 294 P.2d 683; and see also Andrus v. Allred, 17 Utah 2d 106, 404 P.2d 972.

Inasmuch as it came into being as an expression of the will of the people through legislative enactment, if there is to be any such substantial and important change in the law it should be by that same process, and not by judicial pronouncement.[3]

2. Originally enacted in Chap. 52, S.L.U.1935.

3. See statement Stanton v. Stanton, 30 Utah 2d 315, 517 P.2d 1010, and authorities therein cited.