PRIMES, APPELLEE, *v.* TYLER, APPELLANT.

(No. 75-61—Decided July 23, 1975.)

*Messrs. Cherpas, Manos & Syracopoulos, Mr. Christopher T. Cherpas, Messrs. Spangenberg, Shibley, Traci, Lancione & Markus* and *Mr. Richard M. Markus,* for appellee.

*Messrs. Knowlton, Sanderson, Ragan, Cady, Corbett & Drexler* and *Mr. William J. Cady,* for appellant.

WILLIAM B. BROWN, J.  R. C. 4515.02, the Ohio guest statute, reads:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, resulting from the operation of said motor vehicle, while such guest is being transported without payment therefor in or upon said motor vehicle, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner, or person responsible for the operation of said motor vehicle."

Upon this record, we agree with the determination of the Court of Appeals that plaintiff was a guest transported without payment, and not a "passenger." Plaintiff's allegation of negligence, rather than willful and wanton misconduct, on the part of defendant, squarely places defendant within the class of persons which the guest statute absolves of liability. Plaintiff may not recover for his injuries unless that statute contravenes the organic law of this state or nation. If the guest statute is unconstitutional, it "* * * is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal

contemplation, as inoperative as though it had never been passed." *Norton* v. *Shelby County* (1886), 118 U. S. 425, 442. Therefore, the question presented is whether the guest statute contravenes the constitutions of Ohio or of the United States.[1]

The guest statute finds its provenance in Connecticut where it was introduced in 1927, upheld by that state's Supreme Court in *Silver* v. *Silver* (1928), 108 Conn. 371, 143 A. 240, affirmed, 280 U. S. 117, and promulgated in Ohio as G. C. 6308-6 (115 Ohio Laws 57) on June 15, 1933. The statute's twofold objective has been described as to preserve the hospitality of the host-driver[2] and to prevent the possibility of fraudulent, collusive lawsuits against insurance companies.[3]

---

[1]Text of pertinent constitutional provisions.

Section 2, Article I of the Ohio Constitution reads:

"All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the General Assembly."

Section 16, Article I of the Ohio Constitution reads:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial. or delay."

The Fourteenth Amendment to the United States Constitution reads:

"All persons born or naturalized in the United States, and subject to the jursdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[2]*Stiltner* v. *Bahner* (1967), 10 Ohio St. 2d 216, 222 ("The purpose of the guest statute is to protect the driver of the vehicle from being sued for injury by a rider upon whom he is intending to confer a benefit without payment therefor at the time of the claimed injury.").

[3]*Thomas* v. *Herron* (1969), 20 Ohio St. 2d 62, 66 ("* * * [T]he underlying purpose of the guest statute * * * is to prevent the pos-

Although this court "* * * need not in equal protection cases accept at face value assertions of legislative purposes, when an examination of the legislative scheme and its history demonstrates that the asserted purpose could not have been a goal of the legislation" (*Weinberger* v. *Wiesenfeld* [1975],    U. S.    , 43 L. Ed. 2d 514, 525, at fn. 16), we consider only the foregoing dual legislative purposes and proceed to "* * * the determination of whether there is some ground of difference having a fair and substantial relation to at least one of the stated purposes justifying the different treatment accorded * * *" (*Johnson* v. *Robison* [1974], 415 U. S. 361, 376) automobile passengers who pay the driver, and those passengers who do not.

Since "[t]he guest statute is intended to shield from liability" a certain "category of persons" (*Thomas* v. *Herron* [1969], 20 Ohio St. 2d 62, 64), we look first at the category thus established and its compatibility with equal protection guarantees.

"* * * We do not inquire whether this statute is wise or desirable * * *. Misguided laws may nonetheless be constitutional." *James* v. *Strange* (1972), 407 U. S. 128, 133. However, "* * * the mere recitation of a benign * * * [statutory] purpose is not an automatic shield which protects against any inquiry into the *actual* purposes underlying a statutory scheme." (Emphasis added.) *Weinberger* v. *Wiesenfeld, supra* (43 L. Ed. 2d 514), at page 525.

Under "traditional" equal protection analysis, it was required that a statutory classification be "shown to be necessary to promote a *compelling* governmental interest" (*Shapiro* v. *Thompson* [1969], 394 U. S. 618, 634) when it violated a "fundamental" interest (*Belle Terre* v. *Boraas* [1974], 416 U. S. 1, 7), or was based upon a trait which rendered it "suspect" (*San Antonio Independent School*

sibility of fraud and collusion between social friends and family members to recover from the driver's insurance carrier."); *Kitchens* v. *Duffield* (1948), 149 Ohio St. 500, 503; Prosser, The Law of Torts (4 Ed.) 187, Section 34; White, The Liability of an Automobile Driver to a Non-Paying Passenger, 20 Virginia L. Rev. 326, 332-33.

*Dist.* v. *Rodriguez* [1973], 411 U. S. 1, 61, Justice Stewart, concurring). Otherwise, the classification would be upheld if there existed any conceivable set of facts under which the classification rationally furthered a legitimate legislative objective. *McGowan* v. *Maryland* (1961), 366 U. S. 420, 425.

However, "[i]n all equal protection cases * * * the crucial question is whether there is an appropriate governmental interest suitably furthered by the differential treatment." *Police Dept. of Chicago* v. *Mosley* (1972), 408 U. S. 92, 95.

Recognizing that the arbitrary imposition of disabilities " ' * * * is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing' " (*Jimenez* v. *Weinberger* [1974], 417 U. S. 628, 632), Chief Justice Burger states that " ' * * * the equal protection clause does enable us to strike down discriminatory laws * * * where . . . the classification is justified by no legitimate state interest, compelling or otherwise.' [*Weber* v. *Aetna Casualty, & Surety Co.* (1972),] 406 U. S. [164], at 175-176." *Ibid.*

*Jimenez* involved a statutory disparity in eligibility for social security benefits between two classes of illegitimate children. The government argued that to grant "eligibility for such benefits to * * * [the statutorily excluded class of] illegitimates would open the door to *spurious claims,*" i. e., *fraudulent* or *collusive* claims. (Emphasis added.) *Ibid,* at page 634. The government urged that an "absolute bar to disability benefits is necessary to prevent spurious claims because '[t]o the unscrupulous person, all that prevents him from realizing . . . gain is the mere formality of a spurious acknowledgment of paternity or a collusive paternity suit with the mother of an illegitimate child who is herself desirous or in need of the additional cash.' " *Ibid,* at page 635.

The Chief Justice answered that contention as follows:

"We recognize that the prevention of spurious claims

is a legitimate governmental interest * * *. It does not follow, however, that the blanket and conclusive exclusion of appellants' subclass of illegitimates is reasonably related to the prevention of spurious claims. * * * [T]he potential for spurious claims is exactly the same as to both subclasses. * * * Thus, for all that is shown in this record, the two subclasses of illegitimates stand on equal footing, and the potential for spurious claims is the same as to both; hence to conclusively deny one subclass benefits presumptively available to the other denies the former the equal protection of the laws * * *." *Ibid*, at pages 636-637.

The concepts of *Jimenez* are transferable to the present matter. Prior to the enactment of the guest statute, paying passengers and nonpaying guests could recover for injuries negligently inflicted by their driver.* Under the statute, however, a paying passenger may still recover against a driver for ordinary negligence, but a nonpaying guest is wholly precluded from such recovery. The guest is denied all opportunity to disprove that any suit filed by him would be fraudulent, collusive or destructive of hospitality. On the other hand, the statute does nothing to prevent, but perhaps encourages, a guest to present a fraudulent claim that he paid for the ride or that the driver was guilty of willful and wanton misconduct, and prove such claim with perjury and the collusive assistance of the driver.

The North Dakota Supreme Court, in *Johnson* v. *Hassett* (1974), 217 N. W. 2d 771, 778, debunks the asserted statutory objective of preventing fraudulent and collusive suits in guest statute situations, as follows:

"'* * * '[A] guest statute is no final answer to collu-

---

*A guest statute is in derogation of the common law (*Botto* v. *Fischesser* [1963], 174 Ohio St. 322, 325), and in the absence thereof a driver "'* * * must use reasonable and ordinary care for the safety of a guest * * * and is liable for injuries proximately caused by negligence in the handling of the vehicle." *Clinger* v. *Duncan* (1957), 166 Ohio St. 216, 219.

sion. It is still possible for the dishonest to fabricate evidence to support the higher degree of fault required by the statute. 2 Harper & James Torts 961, 1956.' As one example, it would be simple for a colluding host and guest to assert that payment had been made for the transportation, or that the driver was intoxicated, thereby withdrawing the case from the guest statute. In all other cases, we rely upon the standard remedies of perjury, the efficacy of cross-examination, the availability of pretrial discovery, and the good sense of juries to detect false testimony if it should occur. We do not withdraw the remedy from all injured persons in order to avoid a rare recovery based upon false testimony.''

In short, the prevention of spurious claims is not ''suitably furthered'' (*Police Dept. of Chicago* v. *Mosley, supra*) by the guest statute nor by the differential treatment afforded therein to guests and passengers.

The other asserted statutory objective of the guest statute is the promotion or preservation of hospitality.[5] Of course it offends any sense of fairness to contemplate a hitchhiker fleecing his gracious host in a negligence action. However, the category of nonpaying guests includes more than hitchhikers, but gathers in its swath young children or aged relatives who rely upon a ride to the doctor's office. A driver would obviously foster a greater sense of hospitality to a friend or relative ''guest'' than to someone from whom he collects a transportation fee.

The Supreme Court of Kansas, in *Henry* v. *Bauder* (1974), 213 Kan. 751, 760, 518 P. 2d 362, rejected a similar thesis that an ungrateful guest should not be rewarded in a lawsuit against his host, on the ground that ''* * * li-

---

[5]Notions of hospitality underlie R. C. 2305.23, the Ohio good samaritan law. That statute singles out a group of benevolently-disposed individuals for immunity from negligent injury to persons while rendering medical treatment during the exigencies of an emergency. However, the favored treatment accorded such "good samaritans" would appear to further a legitimate legislative objective of providing emergency medical assistance to injured persons where delay might result in death or great bodily injury.

ability insurance has largely eliminated any notion of 'ingratitude.' " We recognize, as do the promoters of the anti-fraud and collusion rationale, that liability insurance is available to most drivers.

It was chiefly recognition of the widespread availability of liability insurance which led this court to abrogate the doctrine of charitable immunity in *Avellone* v. *St. John's Hospital* (1956), 165 Ohio St. 467.

Similarly, such recognition in this case shows that a statutory objective of preventing ingratitude is no longer viable in the context of differential treatment afforded by the guest statute.

Just as the guest statute does not suitably further the governmental interest to preventing collusive lawsuits, the differential treatment afforded therein to guests and passengers cannot be justified by an alleged interest in fostering the amorphic concept of hospitality. It has not been suggested herein that a driver would consider it an affront to hospitality, if his injured guest were to be compensated by the driver's insurer.

We find further that the guest statute imposes, in effect, an "irrebuttable presumption" that a lawsuit filed by any nonpaying guest is fraudulent or collusive or lowers the quantum of hospitality in this state, when that presumption is not necessarily or universally true in fact. In *Vlandis* v. *Kline* (1973), 412 U. S. 441, a similar irrebuttable presumption was imposed against Connecticut college students who, after entering college as "non-residents," were presumed to remain non-residents while enrolled. In fact, many students became Connecticut residents while students, but the statute precluded a change in status. One of three reasons proffered by the state to justify the presumption was fraud prevention: "* * * Without the collusive presumption it would be almost impossible to prevent out-of-state students from claiming a Connecticut residence merely to obtain the lower [tuition] rates." *Ibid*, at 451. The court struck down the presumption as an obvious denial of due process.

We find that the compelling logic of *Vlandis* v. *Kline* applies with equal force to this case. The guest statute conclusively precludes a "remedy by due course of law" (Section 16, Article I of the Ohio Constitution) to injured persons even though evils statutorily assumed to exist may not obtain.

The Utah Supreme Court, in *Cannon* v. *Oviatt* (Utah 1974), 520 P. 2d 883, recently upheld its guest statute because the blueprint for dismantling the statute, *Brown* v. *Merlo* (1973), 8 Cal. 3d 855, 506 P. 2d 212, was not transposable upon the law of Utah, but was fatally intertwined with a legal system indigenous to California.

In words equally applicable to this case and this state, the Utah court noted (520 P. 2d, at 886):

"*Brown* v. *Merlo* is a logical consequence in that jurisdiction stemming from their prior determination to abandon the traditional tort doctrine that the status of a person determined the duty owed to him. In this jurisdiction the distinction between 'invitees' or 'business visitors' and 'licensees' or 'social guests' has been preserved. * * * Likewise, the distinction between a paying passenger and an automobile guest has been retained in the correlative distinctions between an invitee and licensee.

"* * * [T]he court in *Brown* v. *Merlo* relied extensively on *Rowland* v. *Christian* [(1968), 69 Cal. 2d 108, 443 P. 2d 561, which nullified the "traditional distinction between invitees and licensees"] to prove the invalidity of the hospitality justification for the guest statute."

Other states which have recently judicially reexamined their guest statutes have done so in light of *Brown* v. *Merlo*, and the decision to retain or strike down the statute has been determined by the compatibility of the *Brown* rationale to the particular state's jurisprudence.

The Supreme Court of Delaware, in *Justice* v. *Gatchell* (1974), 325 A. 2d 97, after a thorough inquiry into the adoptability of the *Brown* v. *Merlo* rationale, upheld its guest statute by concluding that the Legislature is the prop-

er body to repeal it. The court, at page 101, also surveyed recent guest statute decisions, as follows:

"The Court of Civil Appeals of Texas unanimously declined to follow *Merlo*, and upheld the Texas guest statute. *Tisko* v. *Harrison*, Civ. App. Texas, 500 S. W. 2d 565 (1973). The Supreme Court of Kansas, in a 4-3 decision, adopted the basic rationale and conclusion of *Merlo*, and held the Kansas Guest Statute violative of federal and state equal protection constitutional guaranties. *Henry* v. *Bauder*, 213 Kan. 751, 518 P. 2d 362 (1974). The Supreme Court of Utah declined to follow *Merlo*, and unanimously upheld the guest statute of that state against a similar equal protection assault. *Cannon* v. *Oviatt and Martin*, Utah Supr., 520 P. 2d 883 (1974). The Supreme Court of Iowa, in a 5-4 decision, rejected the *Merlo* approaches to the problem and upheld the Iowa guest statute as constitutional under the equal protection clause, *Keasling* v. *Thompson*, Iowa Supr., 217 N. W. 2d 687 (1974). The Supreme Court of North Dakota, declining to test their guest statute under the federal Constitution, but following the *Merlo* approaches, unanimously found their statute violative of the 'arbitrary classifications' provision of the state Constitution in view of changing conditions occurring since the statute's enactment in 1931. *Johnson* v. *Hassett*, N. D. Supr., 217 N. W. 2d 771 (1974)."

This court's careful consideration of *Brown* v. *Merlo* forces us to conclude that *Brown* lacks persuasive force against the backdrop of Ohio law. To strike down our guest statute on authority of *Brown* would result in a "constitutional curiosity * * * [arrived at] by a process that can only be described as brute force," as Justice Harlan remarked in his dissenting opinion in *Glona* v. *American Guarantee & Liability Ins. Co.* (1968), 391 U. S. 73, 76.

However, under the analysis we have articulated, this court holds the Ohio guest statute, R. C. 4515.02, violative of Section 2, Article I of the Ohio Constitution, in that it denies equal protection and benefit of the law to the peo-

ple of this state by its grant of a special privilege and immunity to negligent drivers who injure nonpaying passengers; is violative of Section 16, Article I of the Ohio Constitution, in that it closes the courts and denies a remedy by due course of law to some but not all the people of this state; and is violative of the Fourteenth Amendment to the United States Constitution, in that it denies due process of law and equal protection of the laws to the people of this state.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE and P. BROWN, JJ., concur.