OPINION
{¶ 1} Appellants, Joeann Hudspath, et al., appeal from the September 28, 2004 judgment entry of the Ashtabula County Court of Common Pleas granting appellee's, The Cafaro Management Company, motion for summary judgment.
 {¶ 2} On November 24, 2000, "the busiest shopping day of the year," Joeann Hudspath was shopping with her husband at the Ashtabula mall. At approximately 5:40 p.m., mall personnel identified a spilled beverage outside Babbages, a purveyor of computer games and software. Mall maintenance was notified, the spill was cleaned up and a yellow "wet floor" sign was placed over the wet area. The sign remained for approximately fifty-five minutes. At some point, the sign was knocked over such that it was laying flat on the floor of the mall's common area. Linda Portzer, a mall employee working in a kiosk outside of Babbages testified she noticed the collapsed sign. Portzer stated she intended to pick it up and alert maintenance, however, a customer arrived to whom she had to attend. Portzer ultimately estimated the sign was laying on the floor for "at least" fifteen to twenty minutes.
 {¶ 3} Emery Strohm, appellee's property manager, indicated that the mall had no policies or procedures regarding the retrieval of wet floor signs after floors dried. However, Portzer, who had worked in the mall for over ten years, indicated the signs had a propensity to be knocked over by mall patrons. Portzer stated she had observed "wet floor" signs collapsed on the mall's floor between eight and ten times prior to the current incident during her employment.
 {¶ 4} After Hudspath purchased two items at Coach House and made a purchase at Babbages, she was holding her purse and two shopping bags. Hudspath testified she cradled the packages close to her body due to chronic back problems. The manner in which Hudspath held her packages permitted her to see the crowd well, but did not allow her to see what was immediately below her feet. As she entered the mall traffic, she stepped on the collapsed "wet floor" sign and fell injuring her shoulder.
 {¶ 5} On June 1, 2002, appellants filed suit against The Cafaro Company and Cafaro Management Company. The defendants filed their answer on August 30, 2002. On July 15, 2004, the defendants filed their motion for summary judgment. On August 5, 2004, appellants filed their motion in opposition to defendants' motion for summary judgment. On August 20, 2004, appellants filed a notice voluntarily dismissing their claims against defendant The Cafaro Company, leaving appellee, Cafaro Management Company, the sole defendant. On August 29, 2004, the trial court granted appellee's motion for summary judgment. The court determined appellee was not liable because appellants failed to establish appellee knew or should have known about the collapsed sign. The court further determined, irrespective of the issue of notice, the collapsed sign was an open and obvious hazard thereby nullifying any duty of care appellee owed appellants.
 {¶ 6} Appellants now appeal and raise two assignments of error for our review. Their first assignment of error alleges:
 {¶ 7} "The trial court erred in granting summary judgment where genuine issues of material fact exist concerning the appellee's constructive notice of the dangerous condition."
 {¶ 8} This court reviews de novo a trial court's order granting summary judgment. Hapgood v. Conrad, 11th Dist. No. 2000-T-0058, 2002-Ohio-3363, at ¶ 13. "A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law." Id. Initially, the moving party shoulders the burden to conclusively show no genuine issues of material fact and the court must view the evidence and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. See,Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. However, the nonmoving party is not entitled to proceed to trial merely on the basis of allegations, but must come forward with some significant probative evidence to show a material issue of fact exists to support its claim. Id., see also, Celotex Corp. v. Catrett
(1986), 477 U.S. 317, 324. If the nonmoving party fails to meet its reciprocal burden on an essential element of its case, the moving party is entitled to summary judgment. Id. at 323.
 {¶ 9} In order to set forth a claim for negligence a plaintiff must prove the following elements: "(1) the existence of a duty owed by the defendant to the plaintiff, (2) the breach of duty, (3) causation, and (4) damages." Erie Ins. Co. v.Cortright, 11th Dist. No. 2002-A-0101, 2003-Ohio-6690, at ¶ 12. Under the circumstances, appellant was an invitee on appellee's business premises. A business owner owes her invitees a duty of reasonable care in maintaining her business premises in a safe condition. Estate of Mealy v. Sudheendra, 11th Dist. No. 2003-T-0065, 2004-Ohio-3505, at ¶ 29. This means a business owner must keep her premises reasonably safe and alert invitees to any hidden dangers of which she has or should have knowledge. Id. Hence, in order to prevail in a slip and fall case, an invitee must demonstrate the business owner had notice, whether actual or constructive, of the dangerous condition which caused the injury.Johnson v. The Wagner Provision Co. (1943), 141 Ohio St. 584, paragraph three of the syllabus.
 {¶ 10} In their first assignment of error, appellants argue they put forth adequate evidence to create a genuine issue of material fact on the issue of whether appellee had constructive notice of the dangerous condition causing her fall. To demonstrate appellee had constructive notice of the dangerous condition, appellant must show "that the danger had existed for a sufficient time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care." Id. "The standard for determining sufficient time to enable the exercise of ordinary care requires evidence of how long the hazard existed." Combs v. FirstNational Supermarkets, Inc. (1995), 105 Ohio App.3d 27, 30, citing Anaple v. The Standard Oil Company (1955),162 Ohio St. 537, 541.
 {¶ 11} Here, the issue is whether a period of at least fifteen to twenty minutes in which a collapsed "wet floor" sign lies on the floor of a busy mall corridor is adequate to allow an inference that the store maintenance had constructive notice of its existence. When the facts are viewed in a light most favorable to appellants, a reasonable trier of fact could conclude appellee should have known the sign had collapsed.
 {¶ 12} The evidence showed the "wet floor" sign had been sitting out in the public walk area for approximately fifty-five minutes before Joeann Hudspath's fall. Linda Portzer, a mall employee and witness to Hudspath's fall, testified she observed the sign collapsed on the floor at least fifteen to twenty minutes before Joeann Hudspath fell. While Portzer could not testify with specific certitude to the time frame, she testified her estimation was fairly accurate because, immediately after noticing the fallen sign, she waited on a customer. Portzer claimed she generally spent about fifteen to twenty minutes with each customer. After helping the customer, Portzer witnessed Joeann Hudspath's fall. Accordingly, appellants put forth some evidence that the hazard existed for an appreciable time prior to Joeann Hudspath's fall.
 {¶ 13} Furthermore, appellants did not allow the notice inquiry to repose with the timeframe evidence alone; appellants additionally put forth evidence that appellee had actual notice that "wet floor" signs would periodically collapse in the mall area. Portzer testified she had observed "wet floor" signs collapse between eight and ten times in the mall between seven and eight years. Portzer indicated the signs would collapse after being bumped by mall patrons or being kicked by kids. Portzer testified each time she observed a collapsed sign she notified either maintenance or mall security. Significantly, "a few months" prior to the incident at bar, Portzer testified she witnessed a mall patron slip on a collapsed "wet floor" sign in the same manner Joeann Hudspath slipped. That patron did not fall and was not injured. However, Portzer testified she had warned mall personnel "if somebody stepped on [the collapsed sign], they were going to fall. And it wasn't if. It was when they were going to do it." From this evidence one could reasonably infer appellee was aware (1) that the signs periodically collapsed and (2) if a sign did collapse, the hazard could be a catalyst for a patron slipping.
 {¶ 14} Looking at the evidence as a whole, appellants put forth evidence that the sign had been placed outside Babbages approximately fifty-five minutes before Hudspath's accident. Appellants also offered evidence that the sign had been resting on the floor for fifteen to twenty minutes prior to the fall. Further, evidence revealed appellee had prior awareness that the signs had a tendency to fall as a result of the accidental or intentional acts of patrons meandering through the mall. With the foregoing in mind, we believe appellants have put forth adequate evidence to create a genuine issue of fact regarding the issue of whether appellee had constructive notice of the existence of the hazard in question. Accordingly, the trial court erred in its determination that appellees had no notice of the collapsed sign as a matter of law. Appellants' first assignment of error is therefore sustained.
 {¶ 15} Appellants second assignment of error states:
 {¶ 16} "The trial court erred in granting summary judgment where genuine issues of material fact exist as to whether the condition which caused appellant's injury was an open and obvious condition."
 {¶ 17} Under their second assignment of error, appellants argue that a genuine issue of material fact exists as to whether the collapsed sign on which Hudspath tripped was "open and obvious." Hudspath asserts that attendant circumstances surrounding her fall were sufficient to create material issues of fact regarding the openness and obviousness of the hazard.
 {¶ 18} The duty of reasonable care a premises-owner generally owes its invitees ceases to exist where dangers or obstructions are so obvious that the invitee may reasonably be expected to discover them and protect herself against them. Armstrong v.Best Buy Co., Inc., 99 Ohio St.3d 79, 80, 2003-Ohio-2573. This principle is based upon the legal acknowledgement that one is put on notice of a hazard by virtue of its open and obvious character. Id. Where a danger is obvious, an owner may reasonably expect that persons entering the premises will discover those hazards and take proper measures to protect themselves. When applicable, the open and obvious doctrine abrogates the duty to warn and completely precludes negligence claims. Hobart v. Cityof Newton Falls, 11th Dist. No. 2002-T-0122, 2003-Ohio-5004, ¶ 10.
 {¶ 19} However, the question of whether something is open and obvious cannot always be decided as a matter of law simply because it may have been visible. Collins v. McDonald's Corp.,
8th Dist. No. 83282, 2004-Ohio-4074, at ¶ 12, citing Texler v.D.O. Summers Cleaners Shirt Laundry Co., 81 Ohio St.3d 677,1998-Ohio-602. Rather, the "attendant circumstances" of a slip and fall may create a material issue of fact as to whether the danger was open and obvious. Louderback v. McDonald'sRestaurant, 4th Dist. No. 04CA2981, 2005-Ohio-3926, at ¶ 19. Attendant circumstances include any distraction that would divert the attention of a pedestrian in the same circumstances and thereby reduce the amount of care an ordinary person would exercise. McGuire v. Sears, Roebuck and Co. (1996),118 Ohio App.3d 494, 499. In short, attendant circumstances are all facts relating to a situation such as time, place, surroundings, and other conditions that would unreasonably increase the typical risk of a harmful result of an event. See Menke v. Beerman
(Mar. 9, 1998), 12th Dist. No. CA97-09-182, 1998 Ohio App. LEXIS 868, at 2-3, citing Cash v. Cincinnati (1981),66 Ohio St.2d 319.
 {¶ 20} Here, Hudspath was in a crowded mall on the busiest shopping day of the year. Hudspath testified the mall was difficult to negotiate as "[e]verybody was all over." Moreover, Hudspath was carrying a purse and two shopping bags containing items purchased at the mall. Rather than carrying her parcels at her side, Hudspath testified she "cradled" the bags close to her body due to her ailing back. As Hudspath left Babbages, she was able to survey the mall traffic, but she did not possess a full view of the ground immediately below her. In response to defense counsel's query regarding whether Hudspath's view was obstructed, she testified:
 {¶ 21} "[holding the packages as I did] would put me at eye level, because when I was holding them, you know, I was watching where everybody was going. And I guess it would — I mean, I didn't look down, if that's what you're asking. I just had my packages and I was leaving there and there were people all around. I was watching, you know, staying out of their way, and then all of the sudden I was on the floor."
 {¶ 22} Appellee aptly directs our attention to Hudspath's obstructed view of the floor immediately below her and emphasizes its role in her slip and fall. However, an individual is not required, as a matter of law, to constantly look downward while walking. Grossnickle v. Village of Germantown (1965),3 Ohio St.2d 96, paragraph two of the syllabus. We believe this is especially so in situations where an individual is holding packages and her visual field is justifiably focused on avoiding collisions with people who may or may not be paying attention to her. When the facts are viewed most strongly in appellants' favor, we believe the trial court erred in finding the collapsed sign an open and obvious hazard. The circumstances demonstrate that an invitee cradling several packages in a shopping mall while attempting to negotiate a dense crowd of mall shoppers on the day after Thanksgiving would not necessarily discover a collapsed "wet floor" sign as she exited a store. We therefore hold the attendant circumstances of Hudspath's slip and fall create a material issue of fact as to whether appellee breached its duty of care to appellants.
 {¶ 23} Appellants' second assignment of error has merit.
 {¶ 24} Based upon the foregoing, we sustain appellants' two assignments of error and reverse the judgment of the Ashtabula Court of Common Pleas and remand this matter for further proceedings consistent with this opinion.
O'Toole, J., concurs,
Grendell, J., dissents with a Dissenting Opinion.