OPINION
{¶ 1} This case returns to us after being heard by the Supreme Court of Ohio on the certified issue of whether former R.C. 3937.18 provisions (J)(1) and (K)(2) violate the equal protection clauses of the Ohio and United States Constitution. Having answered in the negative, the court reversed our initial determination, and we now address the remaining arguments of appellant's appeal.
 {¶ 2} Substantive and Procedural History *Page 2 
 {¶ 3} This appeal originates from the award of summary judgment by the Trumbull County Court of Common Pleas, to appellees, Motorists Mutual Insurance Companies ("Motorists") on the public policy and constitutional issues presented in the former 1997 version of the uninsured motorist statute provisions, R.C. 3937.18(J)(1) and (K)(2).
 {¶ 4} Appellant, Mrs. Elizabeth Burnett, was denied recovery for injuries she sustained while riding as a passenger in her husband's vehicle on February 13, 2000. The negligence of her husband, Mr. Albert Burnett, directly and proximately caused the accident.
 {¶ 5} Mrs. Burnett's claim had been denied by Motorists due to the "intra-family" exclusions set forth in the liability and uninsured motorist coverages in the policy between Mr. Burnett and Motorists. Initially, the trial court determined that Mrs. Burnett was entitled to the uninsured motorists benefits after finding that R.C. 3937.18(J)(1) and (K)(2) were ambiguous and irreconcilable. Thus, the intra-family exclusion was unenforceable and the uninsured motorist provisions applied.
 {¶ 6} Being duty-bound to follow the law of Ohio and the Supreme Court's holding in Kyle v. Buckeye Union Ins. Co., 103 Ohio St.3d 170,2004-Ohio-4885, where the court held that sections (J)(1) and (K)(2) were not conflicting and ambiguous, but rather complementary and unambiguous, we reversed and remanded in Burnett v. Motorists Mut. Ins.Cos., 11th Dist. No. 2003-T-0101, 2005-Ohio-4333 ("Burnett I"). We instructed the trial court to address the public policy and constitutional issues that had not yet been considered or addressed. *Page 3 
 {¶ 7} Subsequently, the trial court awarded summary judgment in favor of Motorists. Mrs. Burnett appealed in Burnett v. Motorists Mut. Ins.Cos., 172 Ohio App.3d 455, 2007-Ohio-1639 ("Burnett II"), arguing that the trial court erred in granting Motorists' motion for summary judgment because the intra-family exclusion violated Ohio public policy, the Contracts Clause of the Ohio Constitution, as well as the Due Process and Equal Protection Clauses of the Ohio and United States Constitutions. We determined that Mrs. Burnett's equal protection clause argument had merit since former (K)(2) effectively precluded her from recovery based on her familial status as an injured person residing with an insured tortfeasor.
 {¶ 8} Our holding was in direct conflict with the Fourth District's determination in Morris v. United Ohio Ins. Co., 160 Ohio App. 3d 663,2005-Ohio-2025. In Morris, the Fourth District determined that the focus of R.C. 3937.18(K)(2) is the vehicle that was being driven at the time of the accident, and not the tortfeasor. Thus, the court reasoned that because this provision was concerned solely with the vehicle, and not the tortfeasor's identity, no classification was created. In the absence of a sufficient legal classification, an equal protection analysis was not required and no discrimination existed that would offend the Ohio and United States Constitutions.
 {¶ 9} In Burnett II, we found the Morris reasoning unpersuasive, since whether or not the focus is placed on the tortfeasor or the vehicle, the disparate effect of this provision was to exclude injured individuals from recovery based solely on their household or familial status.
 {¶ 10} We then granted Motorists' motion to certify a conflict, recognizing that our decision was in direct conflict with the Fourth District in Morris, and certified the *Page 4 
following question for the review of the Supreme Court of Ohio: "Whether former R.C. 3937.18(K)(2) when read in conjunction with [former] R.C. 3937.18(J)(1) violates the Equal Protection Clauses of the Ohio and United States Constitutions since it creates an arbitrary and illogical classification based on household status that has a disparate and unfair effect since it precludes coverage for injured individuals who may not recover solely because they are related and live in the household of the insured?"
 {¶ 11} The Supreme Court of Ohio agreed to review the certified issue, and also accepted Motorists' discretionary appeal that involved the same issue in Burnett v. Motorists Mutual Ins. Cos. (June 17, 2008)118 Ohio St.3d 493, 2008-Ohio-2751 ("Burnett III"). The court, following their logic in Kyle and the Fourth District in Morris, did not engage in an equal protection analysis because the court determined that no classification, arbitrary or otherwise, was created by the statute, as the focus in former provision (K)(2) was not on the tortfeasor, but rather, the vehicle that was driven by the tortfeasor. Thus, the court found that Mrs. Burnett's equal protection challenge to be without merit.
 {¶ 12} The case was remanded so that we may address Mrs. Burnett's other constitutional and policy challenges, which she raised in her sole assignment of error:
 {¶ 13} "[1.] The trial court erred to the prejudice of Plaintiff-Appellant when it granted Defendant-Appellee's Motion for Summary Judgment."
 {¶ 14} Summary Judgment Standard of Review
 {¶ 15} We review a trial court's award of summary judgment de novo.Whitfield v. Bartek, 11th Dist. No. 2007-T-0078, 2008-Ohio-1026, ¶ 21, citing Briel v. Dollar General Store, 11th Dist. No. 2007-A-0016,2007-Ohio-6164, ¶ 17; Hudspath v. Cafaro *Page 5 Co., 11th Dist. No. 2004-A-0073, 2005-Ohio-6911, ¶ 8, citing Hapgood v.Conrad, 11th Dist. No. 2000-T-0058, 2002-Ohio-3363, ¶ 13. Thus, we apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter law. Id.
 {¶ 16} "Since summary judgment denies the party his or her `day in court' it is not to be viewed lightly as docket control or as a `little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party." Id. at ¶ 22, quoting Briel at ¶ 18, citing Welch v. Ziccarelli, 11th Dist. No. 2006-L-229, 2007-Ohio-4374, ¶ 40.
 {¶ 17} "In Dresher v. Burt [(1996), 75 Ohio St.3d 280], the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed." Id. at ¶ 23.
 {¶ 18} "The moving party cannot discharge its initial burden under Civ. R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case, but must be able to specifically point to some evidence of the type listed in Civ. R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." Id. at ¶ 24.
 {¶ 19} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of *Page 6 
Civ. R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in Misteff v. Wheeler (1988), 38 Ohio St.3d 112." Id.
 {¶ 20} "The court in Dresher went on to say that paragraph three of the syllabus in Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, is too broad and fails to account for the burden of Civ. R. 56 places upon a moving party. The court, therefore, limited paragraph three of the syllabus in Wing to bring it into conformity withMisteff." (Emphasis omitted.) Id. at ¶ 25, quoting Briel at ¶ 19, citingWelsh at ¶ 41.
 {¶ 21} Thus, the court held in Dresher that "when neither the moving nor nonmoving party provides evidentiary materials demonstrating that there are no material facts in dispute, the moving party is not entitled to judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the basis for the motion, `and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.'" (Emphasis omitted.) Briel at ¶ 20, quotingWelsh at ¶ 42.
 {¶ 22} The Intrafamily Exclusion
 {¶ 23} Former R.C. 3937.18(J)(1) and (K)(2) now at issue read:
 {¶ 24} "(J) The coverages offered under Division (A) of this section or selected in accordance with Division (C) of this section may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances * * *. *Page 7 
 {¶ 25} "(1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made * * *.
 {¶ 26} "(K) As used in this section, `uninsured motor vehicle' and `underinsured motor vehicle' do not include any of the following vehicles: * * *.
 {¶ 27} "(2) A motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured."
 {¶ 28} Kyle's Statutory Interpretation
 {¶ 29} We reviewed in Burnett II the holding of the Supreme Court of Ohio in Kyle, stating that "[w]hile we respectfully disagree with the majority's determination in Kyle that these two code sections do not conflict and find Justice Sweeney's and Justice Pfeifer's dissents more persuasive, we are bound to follow the holding in Kyle as to statutory interpretation * * *." Id. at ¶ 17. In Kyle, the Supreme Court of Ohio explained that "these paragraphs `do not regulate the same thing.' Where paragraph (J) states circumstances in which an insured can be denied uninsured/underinsured motorists insurance ("UM/UIM") protection, paragraph (K) articulates when a tortfeasor will not be considered uninsured or underinsured. These provisions may function in the alternative or together." Burnett II at ¶ 16, quoting Kyle at ¶ 17.
 {¶ 30} Under her sole assignment of error challenging the trial court's grant of summary judgment in favor of Motorists, Mrs. Burnett raises four issues.
 {¶ 31} Public Policy Challenge *Page 8 
 {¶ 32} Firstly, Mrs. Burnett argues that these provisions violate and are contrary to Ohio public policy as both sections deny coverage purchased by the insured based on familial relations. Thus, Mrs. Burnett argues that these provisions are void on public policy grounds because they contravene the underlying purpose of R.C. 3927.18, which is to provide protection to those injured by an uninsured or underinsured tortfeasor.
 {¶ 33} The apparent legislative intent of S.B. 261 was to allow exclusions in order to limit the scope and coverage of UM/UIM insurance. Prior to these amendments, insurers were required by 3937.18(A) to provide UM/UIM insurance. The very policy behind and goal of R.C. 3937.18, however, has since changed, beginning with the 1997 S.B. 261 amendments. Thus, S.B. 261 changed the mandatory requirement to merely an "offer" to provide UM/UIM insurance. Much to the surprise of most consumers, this requirement has since been completely eliminated so that now insurers need not provide any form of UM/UIM coverage.[1]
 {¶ 34} Since R.C. § 3937.18 is written so that it comports with the legislative purpose, it is not violative of public policy. As the Fifth Appellate District Court stated in Robson v. Allstate InsuranceCo., (2001) 5th Dist. No. 01CAE03007, 2001 Ohio App. LEXIS 4193, 8: "Apart from the Pandora's box such a statement opens, we find it appears to be the specific intent of the Ohio General Assembly to allow insurance carriers to contractually limit their exposure. The legislature did so by providing for the exceptions of subsection (J). We will not, in our position as an appellate court, seek to redefine or restructure the statutory scheme clearly defined by the Ohio General Assembly (speaking of provisions (J) and (K)(2))." *Page 9 
 {¶ 35} We agree with this rationale and find that appellant has failed to offer any support for this public policy challenge.
 {¶ 36} Contracts Clause Challenge
 {¶ 37} Secondly, Mrs. Burnett argues that R.C. §§ 3937.18(J) and (K)(2) violate Art. II., Sec. 28 of the Contracts Clause of the Ohio Constitution, by interfering with the contractual obligations between the insured and the insurer thus enabling the insurer to deny coverage to the insured.
 {¶ 38} Art. II, Sec. 28 of the Ohio Constitution forbids the passage of any law that impairs the obligation of contracts. In construing a similar provision in the United States Constitution, the Ohio Supreme Court has noted that "`although the Contract Clause appears literally to proscribe "any" impairment, * * * "the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula."'" Bd. of Trumbull Cty. Commrs. v. City of Warren (2001),142 Ohio App.3d 599, 602, citing Middletown v. Ferguson (1986),25 Ohio St.3d 71, 77 quoting United States Trust Co. v. New Jersey (1977), 431 U.S.1, 21, quoting Home Bldg. Loan Assn. v. Blaisdell (1934),290 U.S. 398, 428.
 {¶ 39} The court must ascertain whether the law "operated as a substantial impairment of a contractual relationship." Id. at 602, quoting Ferguson at 77, quoting Allied Structural Steel Co. v.Spannaus (1978), 438 U.S. 234, 244. See, also, State ex rel. Horvath v.State Teachers Retirement Bd. (1998), 83 OhioSt.3d 67, 76. The court's inquiry has "three distinct components: (1) whether there is a contractual relationship; (2) whether a change in the law impairs that contractual relationship; and (3) whether the impairment is substantial." Id. at 602, citing Horvath at 76. *Page 10 
 {¶ 40} Under this analysis, Mrs. Burnett has failed to allege that there exists any legislation that was retroactively applied to the contractual relationship either between Mrs. Burnett and Motorists or between Mr. Burnett and Motorists. The insurance policy was first issued on March 18, 1981, and was renewed under Ohio law every two years. In accordance with this law, "[n]ow a policy must be guaranteed renewable for two years, but the insurer can incorporate into a renewal policy statutory changes that will then govern the scope of the UM/UIM coverage in the policy." Barrett St. Clair v. Allstate Insurance Co., 1st Dist. No. C-060028, 2006-Ohio-6159, at ¶ 16, cf. Storer v. Sharp, 8th Dist. No. 86525, 2006-Ohio-1577. Thus, the relevant policy at the time of the accident was issued on March 18, 1999 and effective until March 18, 2001.
 {¶ 41} The change in the law occurred prior to Mr. Burnett renewing the policy with Motorists. The 1997 legislative amendments to R.C. § 3937.18(J) and (K)(2) were passed two years prior to the relevant insurance contract at issue, and were in effect from September 3, 1997 through September 20, 2000. Indeed, the endorsement was amended in 1997, before the policy was issued, let alone renewed. Thus, there has been no impairment of a contractual relationship by a retroactive legislative act and we find this argument to be without merit.
 {¶ 42} Due Process Challenge
 {¶ 43} Thirdly, Mrs. Burnett argues that the intrafamily exclusion in R.C. § 3937.18(K)(2) violates the due process clause of the Ohio and U.S. Constitution by summarily denying an injured individual the right to seek redress under Ohio law. *Page 11 
 {¶ 44} "The right to procedural due process is found in theFourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution." State v. Hayden, 96 Ohio St.3d 211,2002-Ohio-4169, ¶ 6.
 {¶ 45} "Although the concept is flexible, at its core, procedural due process under both the Ohio and the United States Constitutions requires, at a minimum, the opportunity to be heard when the state seeks to infringe a protected liberty or property right." State v. Cowen,103 Ohio St.3d 144, 2004-Ohio-4777, at ¶ 8, citing Boddie v.Connecticut (1971), 401 U.S. 371, 377.
 {¶ 46} Appellant uses Primes v. Taylor (1975), 43 Ohio St.2d 195, to support her position and argues that it is analogous to the present case. In Primes, the Supreme Court of Ohio held Ohio's guest statute to be unconstitutional because it prevented nonpaying passengers, or "guests" from having a cause of action when they were injured by a negligent driver. The differential treatment between paying and nonpaying passengers did not justify the governmental interest in that case, which was to prevent fraudulent or collusive claims through false testimony, especially where the standard protections of our trial process such as perjury, cross-examination, and pretrial discovery, already exist. The injured was prevented from bringing a recognized tort action in a court of law and was being denied relief. Unlike the guest statute in Primes, former § 3937.18(K)(2) does not totally foreclose a cause of action from being brought.
 {¶ 47} The former R.C. § 3937.18(K)(2) does not eliminate a cause of action, but rather, as the Supreme Court of Ohio has decided, limits UM/UIM coverage of an insured to exclude vehicles that are already covered under the policy. Following this rationale, there is no blatant avenue of redress being circumvented by the legislation. *Page 12 
The injured individual can still bring a claim directly against the tortfeasor. Such redress provides illusory relief. One family member is suing another, but there is no coverage for the loss. We are bound, however, by the Supreme Court of Ohio's interpretation of these statutory provisions, and thus we must accept this outcome.
 {¶ 48} Following the Supreme Court of Ohio's statutory interpretation in Kyle and Burnett II, we have no alternative but to apply the same rationale; and thus, we find this argument to be without merit.
 {¶ 49} Equal Protection
 {¶ 50} Finally, Ms. Burnett raises an equal protection challenge, which, as we noted above, the Supreme Court of Ohio found to be without merit. Specifically, the court held that "former subsection (K)(2) did not draw an impermissible classification based on household status." Thus, the court found that this effect, where the injured household member is precluded from coverage, "does not have a statutory basis." Therefore, "there is no actual classification of persons in Elizabeth Burnett's situation being drawn by which principles of equal protection could be violated." Burnett III at ¶ 42.
 {¶ 51} In his dissent in Burnett III, Justice Pfeiffer succinctly summarized the situation former R.C. 3937.18(K)(2) has created, remarking that: "[t]he good news is that the damage done by R.C. 3937.18(K)(2) was limited, the statute having been repealed after three years. The bad news is that this court finds nothing constitutionally offensive about that short-lived statute's unequal treatment of Ohioans. Thus, the repeal of R.C. 3937.18(K)(2) did not come soon enough for Elizabeth Burnett. She is left to suffer the consequences of the General Assembly's dark view of the citizens of Ohio as persons *Page 13 
who willingly injure family members by purposely causing automobile accidents in order to collect insurance payouts." Id. at ¶ 45.
 {¶ 52} The Supreme Court of Ohio has already determined that Ms. Burnett's equal protection argument is without merit and we are bound by that decision.
 {¶ 53} The judgment of the Trumbull County Court of Common Pleas is affirmed.
TIMOTHY P. CANNON, J., concurs,
COLLEEN MARY OTOOLE, J., concurs in judgment only.
[1] See later amendments to § 3937.18: S.B. 56, passed in 1999; S.B. 267, passed in 2000; and finally S.B. 97, passed in 2001. *Page 1