OPINION
{¶ 1} Jeff and Kathy Buck ("the Bucks") appeal from a judgment of the Portage County Court of Common Pleas which granted partial summary judgment in favor of Mary Ann Burger, Executrix of the Estate of James S. Glenny ("the Estate"), regarding a lease dispute. For the following reasons, we affirm.
 {¶ 2} Substantive Facts and Procedural History *Page 2 
 {¶ 3} The facts in this case are largely undisputed. Jeff and Kathy Buck, husband and wife, live next to the property owned by Mr. Glenny. In April of 2001, the Bucks, who own and breed horses, made an informal arrangement with Mr. Glenny — the Bucks were allowed to use Mr. Glenny's barn and pasture to keep and graze their horses; in exchange, Mr. Buck would perform maintenance work for the property, including repairing the barn and fences, trimming weeds, and cutting grasses.
 {¶ 4} On June 1, 2001, Mr. Glenny and the Bucks signed a formal lease agreement. The lease agreement, in Article 1, stated:
 {¶ 5} "Tenant shall have exclusive use of the barn and pasture land located at 36 Manning Road, Mogadore, Ohio, to be used only for pasturing, grazing and boarding of horses belonging to the tenant and for no other purpose. Such lease shall be for a period of fifteen (15) years commencing on June 1, 2001 for the monthly rental of One Dollar ($1.00) per month for the Leased Premises. This Lease Agreement, and expressly these terms, shall be binding on the heirs, executors, administrators and/or assigns of each of the parties."
 {¶ 6} The lease also requires Mr. Buck to keep the pastures in good condition and repair, to clean up the debris in the barn, and to maintain insurance on the property. The Bucks paid Mr. Glenny the entire lease amount totaling $180 upfront.
 {¶ 7} The lease agreement was signed by Mr. and Mrs. Buck, and Mr. Glenny. It was witnessed and signed by Mr. Buck's parents, Jeffrey and Roberta Buck. The lease, however, was not notarized or recorded.
 {¶ 8} In November 2004, Mr. Glenny committed suicide. In January 2005, his estate's counsel requested that the Bucks vacate the property. On September 6, 2005, *Page 3 
the Estate listed the property for sale, including the barn and pasture being used by the Bucks. Also on that day, the Estate filed a declaratory judgment action against the Bucks in the Portage County Probate Court, seeking to have the lease agreement declared void.
 {¶ 9} On October 13, 2005, the Bucks filed an answer denying that the lease agreement was invalid, and also filed a counterclaim for alleged breach of contract and unspecified economic damages.
 {¶ 10} On September 26, 2006, the Estate filed an amended complaint alleging the lease agreement was invalid on the ground of fraud (Count One), lack of notary acknowledgement (Count Two), ambiguous description of the leasehold (Count Three), lack of recording (Count four), and the Bucks' failure to obtain insurance for the premises (Count Five) and to maintain the premises (Count Six) in violation of the lease agreement.
 {¶ 11} On November 17, 2006, the Probate Court transferred the case to the general division of the Portage County Court of Common Pleas.
 {¶ 12} On June 26, 2007, the Estate filed a motion for partial summary judgment pursuant to Civ. R. 56(A) regarding Count Two of its complaint. It contended that because the lease agreement failed to meet the statutory requirement of notarization, the purported lease was converted to a month-to-month tenancy.
 {¶ 13} On July 3, 2007, the Bucks moved for summary judgment on all six counts of their complaint.
 {¶ 14} On October 3, 2007, the trial court issued its ruling on the parties' cross-motions for summary judgment. It granted partial summary judgment in favor of the Estate regarding Count Two of the amended complaint, holding that the lack of compliance with the statutory notary requirement rendered the lease agreement invalid and created a *Page 4 
month-to-month tenancy. The court granted summary judgment in favor of the Bucks as to the remaining counts. The trial court stated in its judgment entry that the case will proceed on the Bucks' counterclaim.
 {¶ 15} Subsequently, the Estate moved the court for a nunc pro tunc order making the October 3, 2007 order a final appealable order. The Bucks filed a response opposing that motion on the ground that the Bucks' counterclaim was still pending.
 {¶ 16} On April 1, 2008, the Bucks filed a stipulated dismissal of their counterclaim without prejudice. On April 3, 2008, the trial court issued a journal entry holding the October 3, 2007 judgment to be a final appealable order. The Bucks then filed the instant appeal.[1]
 {¶ 17} On appeal, the Bucks raise a single assignment of error:
 {¶ 18} "[1.]The trial court erred in granting partial summary judgment to plaintiff."
 {¶ 19} The Bucks argue that the lack of notarization required by R.C. 5301.01 does not invalidate a lease and, alternatively, part performance of a lease agreement defectively executed under the Statute of Conveyances may remove it from the operation of the statute.
 {¶ 20} Standard of Review
 {¶ 21} This court reviews de novo a trial court's order granting summary judgment. Hudspath v. Cafaro Co., 11th Dist. No. 2004-A-0073,2005-Ohio-6911, ¶ 8. "A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law." Hapgood v. Conrad, 11th Dist. No. 2000-T-0058, 2002-Ohio-3363, ¶ 13, *Page 5 
citing Parenti v. Goodyear Tire Rubber Co. (1990),66 Ohio App.3d 826, 829.
 {¶ 22} "Since summary judgment denies the party his or her `day in court' it is not to be viewed lightly as docket control or as a `little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In Dresher v.Burt [(1996), 75 Ohio St.3d 280], the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ. R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ. R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ. R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in Mitseff v. Wheeler (1988), 38 Ohio St. 3d 112."Welch v. Ziccarelli, 11th Dist. No. 2006-L-229, 2007-Ohio-4374, ¶ 40.
 {¶ 23} R.C. 5301.01 (the Statute of Conveyances) *Page 6 
 {¶ 24} R.C. 5301.01, the Statute of Conveyances, sets forth the legal requisites necessary to create a valid lease. It provides that a lease should be executed in the following manner:[2]
 {¶ 25} "(A) A deed, mortgage, land contract as referred to in division (A)(2)(b) of section 317.08 of the Revised Code, or lease of any interest in real property and a memorandum of trust as described in division (A) of section 5301.255 [5301.25.5] of the Revised Code shall be signed by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land contract, or lease or shall be signed by the trustee in the case of a memorandum of trust. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the trustee, before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgement and subscribe the official's name to the certificate of the acknowledgement."
 {¶ 26} Furthermore, R.C. 5301.08 exempts leases not exceeding three years from the formalities required by R.C. 5301.01. The instant lease agreement has a term of fifteen years and therefore R.C. 5301.08 is pertinent to its validity.
 {¶ 27} A review of the case law authority indicates that the courts have interpreted the requirements of R.C. 5301.08 to be mandatory. InDelfino v. Paul Davies Chevrolet, Inc. (1965), 2 Ohio St. 2d 282,284-285, the Supreme Court of Ohio stated: *Page 7 
 {¶ 28} "[R.C. 5301.08] is mandatory in nature and sets forth clearly the legal requisites necessary to create a valid lease.
 {¶ 29} "Since early in Ohio legal history, it has been held that a defectively executed lease is invalid and does not operate to convey the estate or create the term of leasehold sought to be created thereby." Id. citing Richardson v. Bates (1858), 8 Ohio St. 257, and Wineburgh v.Toledo Corp. (1932), 125 Ohio St. 219, paragraph one of the syllabus.
 {¶ 30} In Delfino, the proponent of the defectively executed lease contract asked the court to permit the defects in execution to be cured by R.C. 2719.01.[3] The court refused. The court explained the difference between "technical defects of content" in a lease curable by R.C. 2719.01 and a failure to comply with the mandatory requirements of R.C. 5301.01. Stressing the importance of strict compliance with R.C. 5301.01, the court reasoned:
 {¶ 31} "Appellant places too broad an interpretation on [R.C. 2719.01]. To follow appellant's argument would result in rendering completely nugatory the provisions of Section 5301.01, Revised Code, requiring that certain formalities must attend the execution of instruments transferring an interest in property. Substantially, parties could say: `We don't care what the law requires in relation to transfers of real property. Section 2719.01, Revised Code, will make any instrument we execute valid.' To follow this theory, any scrap of paper, no matter how informal, would constitute a deed or lease.
 {¶ 32} "This is not the intent or purpose of Section 2719.01, Revised Code. Such section relates only to technical defects in instruments. It saves instruments which do not *Page 8 
comply strictly with the technical requirements as to content; it does not relieve the parties from complying with the mandatory requirements of Section 5301.01, Revised Code, having to do with the formal requirements in executing instruments relating to the transfer of real property." Id. at 285-286.
 {¶ 33} We are aware that an instrument can be valid despite a failure to comply with R.C. 5301.01 as between the parties. As we explained inBasler v. Multicare Co. (Nov. 19, 1999), 11th Dist. No. 98-G-2201, 1999 Ohio App. LEXIS 5506, a case that involved a defectively acknowledged deed:
 {¶ 34} "A failure to comply with the provisions of R.C. 5301.01 can result in an inability to pass `legal title' as that term is defined in the context of affording notice of recordation of the conveyance of the property to creditors and subsequent purchasers. Nevertheless, as between the grantor and grantee, the deed is valid, despite a defective acknowledgment." Basler at *9, citing In re Downs (1996), 205 B.R. 93,96, citing Citizens Nat'l Bank v. Denison (1956), 165 Ohio St. 89;Seabrooke v. Garcia (1982), 7 Ohio App. 3d 167; Basil v. Vincello
(1990), 50 Ohio St. 3d 185.
 {¶ 35} "The Supreme Court of Ohio in Denison recognized that the purpose behind having a deed acknowledged is to have evidence of proper execution by the grantor. Without this acknowledgment, there is no authority under which the deed can be properly recorded. This is consistent with the purpose behind recording which is to provide notice to creditors and subsequent purchasers. As a result, a defectively acknowledged deed is valid, in the absence of fraud, between the parties to a transaction and their heirs, and may be enforced in equity in a contract for the conveyance of legal title." Basler at *10, citing *Page 9 Troglin v. Bennett (Sept. 30, 1993), 11th Dist. No. 192-L-183, 993 Ohio App. LEXIS 4801, *3.
 {¶ 36} Basler, however, concerns a deed. Regarding leases, the law is settled in Ohio that "where a purported lessee takes possession under a defectively executed lease and pays rent, `a tenancy will be implied and is subject to all of the terms of the purported lease except duration.'"Regency Plaza, LLC v. Morantz, 10th Dist. No. 06AP-837, 2007-Ohio-2594, ¶ 36, citing Zunshine v. Wallace F. Ackley Co. (Mar. 30, 2000), 10th Dist. No. 99AP-531, 2000 Ohio App. LEXIS 1302, fn.1; see, also,Ruben v. S.M. N. Corp. (1993), 83 Ohio App.3d 80, 83.
 {¶ 37} Our court has followed this rule. In Cesta v. Manfredi (1995),101 Ohio App. 3d 326, this court encountered a purported lease which had a term of five years, and, as with the instant lease agreement, was not acknowledged or recorded. We stated:
 {¶ 38} "The well settled rule appears to be * * * that where the lessee enters into possession of the demised premises under a lease for a term of years at an annual rent, if the lease for any cause be void he becomes a tenant for a year at the rent reserved in the lease, and subject to all of its provisions, except its duration." Cesta at 329, citing Baltimore Ohio RR. Co. v. West (1897), 57 Ohio St. 161, 165.
 {¶ 39} Moreover, "the duration of the term is determinable by the provision for payment of rent, so a defectively executed lease providing for annual rent creates a tenancy from year to year, whereas a defective lease providing for monthly rent creates a tenancy from month to month."Cesta at 329, citing Wineburgh at 222. See, also, Delfino at 284-285 ("a defectively executed lease for a term of five years upon monthly rental creates a tenancy in the lessee from month to month"). *Page 10 
 {¶ 40} Other appellate courts have similarly applied this rule. See, e.g., Friedrich v. Matrka (Mar. 23, 1978), 8th Dist. No. 37178, 1978 Ohio App. LEXIS 9975, *8 (where the lessee paid rent to the lessor on a monthly basis, and where the lease between the parties was void, the trial court was correct in holding that the tenancy created was a month-to-month tenancy); 380 East Town Assoc. v. Mangus (June 20, 1991), 10th Dist. No. 91AP-92, 1991 Ohio App. LEXIS 2924, *6 (a defectively executed lease created a monthly rental agreement on a month-to-month tenancy); Kilcoyne Props., LLC v. Fischbach, 5th Dist. No. 03CA072,2004-Ohio-7272, ¶ 40 (a defectively executed lease providing for annual rent creates a tenancy from year to year, whereas a lease providing for monthly rent creates a tenancy from month to month); Yelanosky v.White (Jan. 26, 1995), 8th Dist. No. 67479, 1995 Ohio App. LEXIS 241, *4-5 (where the agreement between the parties did not comply with the legal requirements of R.C. 5301.01 for the creation of a lease, tenancy at will was created when possession of the premises was taken under the invalid lease; upon payment and acceptance of rent, the tenancy at will then converted to a periodic tenancy, the period of the tenancy being established was based on the terms of the payment of rent; and a month-to-month tenancy was created where a lease provides for monthly payments).
 {¶ 41} In the instant case, it is undisputed that the lease agreement between the Bucks and Mr. Glenny was not acknowledged before a notary as required by R.C. 5301.01. Therefore, the lease is invalid and, as the lease provides for a monthly rent payment, the trial court correctly concluded that the Bucks' leasehold becomes a month to month tenancy.
 {¶ 42} The Doctrine of Part Performance *Page 11 
 {¶ 43} The Bucks concede that the subject lease agreement was deficiently executed, but argue that the doctrine of part performance removes it from the operation of R.C. 5301.01. In Delfino, the court also considered the issue of whether the defectively executed lease was nonetheless valid under the doctrine of part performance. It explained the doctrine as follows:
 {¶ 44} "The final question for determination is whether this lease has been removed from the operation of the statute of conveyances under the doctrine of part performance.
 {¶ 45} "The basic elements necessary to remove an instrument from the operation of the statute of frauds are also necessary to remove it from the operation of the statute of conveyances.
 {¶ 46} "The doctrine of part performance is based in equity. It is applied in situations where it would be inequitable to permit the statute to operate and where the acts done sufficiently establish the alleged agreement to provide a safeguard against fraud in lieu of the statutory requirements.
 {¶ 47} "Part performance to be sufficient to remove the agreement from the operation of the statute of conveyances (Section 5301.01, Revised Code) must consist of unequivocal acts by the party relying upon the agreement, which are exclusively referable to the agreement and which have changed his position to his detriment and make it impossible or impractical to place the parties in status quo. If the performance can reasonably be accounted for in any other manner or if [the party seeking to enforce the lease] has not altered his position in reliance on the agreement, the case remains within the operation of the statute." Id. at 286-287 (Internal citations omitted). *Page 12 
 {¶ 48} The circumstances of the instant case do not meet the requirements of the doctrine of part performance for the lease to be removed from the operation of R.C. 5301.01. This is because the Bucks' acts in reliance of the lease agreement had not changed their position to their detriment and made it impossible or impractical to place the parties in status quo. As the trial court correctly reasoned in its judgment entry:
 {¶ 49} "Here, the parties can easily be returned to the status quo. The lease required the Bucks to maintain the barn and pasture in good condition and repair, clean out the debris in the barn, and maintain liability and property insurance on the leasehold. These, of course, were necessary for the Bucks' use of the premises for their horses, whether the term of their occupancy was one year or fifteen years. If the Bucks' month to month tenancy is terminated, they can terminate the maintenance and insurance on the premises, and the Estate will have to repay the Bucks any balance of the rent paid in advance. This returns the parties to the former status quo without subjecting the Bucks to any substantial inequity. The Bucks are not entitled to equity to enforce the invalid lease due to part performance."
 {¶ 50} The Bucks cited Sigg v. Subway Sandwich Shops (July 23, 1997), 3d Dist. No. 4-97-12, 1997 Ohio App. LEXIS 3381, to support their position that part performance removed the instant case from the operation of R.C. 5301.01. Their reliance in this case is misplaced. InSigg, the lessee Subway expended considerable time and money to remodel the premises to make it look like the standard Subway shop, pursuant to the terms of the lease. The lessor claimed the lease was invalid because it was deficiently executed in violation of R.C. 5301.01, and the trial court agreed. On appeal, however, the Third District applied the doctrine of part performance and reversed the trial court. In *Page 13 
explaining its holding, the appellate court reasoned that "Subway's acts changed its position to its detriment if the lease is not followed because Subway has gone to the expense of starting its sandwich shop and maintaining it with the understanding that it could remain at that location for a maximum of twenty years under the lease. * * * Subway's acts and [the lessor's] acceptance of the benefit of the contract make it impossible to return the parties to the positions they would have held if the lease had never occurred." Id. at *8.
 {¶ 51} Subway's considerable expenditure in remodeling the property in reliance on the lease agreement changed Subway's position to its detriment and made it impossible or impractical to return the parties to status quo. In the instant case, however, there is no evidence of any permanent improvements made by the Bucks on the land which would make it impossible or impractical to place the parties in positions they would have held if the lease had never occurred.
 {¶ 52} The Bucks claim they suffered detriment in that after four years of boarding their horses on Mr. Glenny's property, they cannot place their horses elsewhere "without severe prejudice." However, the record is devoid of any evidence substantiating that claim. As the Bucks fail to meet the evidentiary burden to set forth specific facts showing there is a genuine issue for trial regarding whether part performance removes the instant lease from the operation of R.C. 5301.01, summary judgment on this issue is proper.
 {¶ 53} For the foregoing reasons, we conclude that because the lease agreement between the Bucks and Mr. Glenny was not notarized as mandated by the Statute of Conveyances, the trial court properly held that the lease was invalid and a month-to-month tenancy was created. The Bucks' assignment of error is without merit. *Page 14 
 {¶ 54} The judgment of the Portage County Court of Common Pleas is affirmed.
TIMOTHY P. CANNON, J., concurs, COLLEEN MARY OTOOLE, J., dissents with Dissenting Opinion.
[1] The Estate did not cross-appeal the trial court's granting of summary judgment in favor of the Bucks regarding Counts One, Three, Four, Five and Six of its complaint.
[2] The current version of R.C. 5301.01 took effect on February 1, 2002. The current version eliminates the requirement of the former R.C. 5301.01 that deeds, mortgages, land contracts, leases and memoranda of leases of real property, memoranda of trust, certain powers of attorney, and other recordable instruments and transactions pertaining to real property be signed and attested to in the presence of witnesses. Furthermore, the General Assembly declared its intent that the amendment to the former R.C. 5301.01 is retrospective in its operation. See § 3 of HB 279. Therefore, the current version of the statute applies in the instant lease agreement, signed on June 1, 2002. The change in the statute, however, is not pertinent to the instant case, because the lease here lacks proper notarization, still required by the current version of the statute, rather than proper attestation by the witnesses.
[3] R.C. 2719.01 states: "When there is an omission, defect, or error in an instrument in writing or in a proceeding by reason of the inadvertence of an officer, or of a party, person, or body corporate, so that it is not in strict conformity with the laws of this state, the courts of this state may give full effect to such instrument or proceeding, according to the true, manifest intention of the parties thereto."