[Cite as *Norman v. Norman*, 2025-Ohio-3062.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CHARLES NORMAN, | Case No. 25 CAF 02 0018 |
| Plaintiff - Appellee | Opinion & Judgment Entry |
| -vs- | Appeal from the Delaware County Court of Common Pleas, Domestic-Relations Division, Case No. 20 DRA 07 0345 |
| AJA NORMAN, | |
| Defendant – Appellant | Judgment:  Affirmed |
| | Date of Judgment:  August 27, 2025 |

BEFORE: Craig R. Baldwin; Kevin W. Popham; David M. Gormley, Judges

APPEARANCES: Douglas B. Dougherty, for Plaintiff-Appellee; Aja Norman briefed and argued the case on her own behalf as Defendant-Appellant.

*Gormley, J.*

**{¶1}** Appellee Charles Norman obtained a divorce from appellant Aja Norman in Delaware County.  As part of that divorce, the trial court awarded custody of Aja and Charles's son to Charles and also divided the parties' marital property.  Aja now challenges here those child-custody and property-division orders.  Finding no error in the trial court's judgment, we now affirm.

**The Key Facts**

**{¶2}** Aja and Charles married in 2012, and together they had a son, H.N., who was born in 2013.  In July 2020, Charles filed for a divorce from Aja.  The divorce action proceeded to a trial before a magistrate on disputed issues concerning the division of personal property and the proper child-custody arrangements for H.N.

**{¶3}** At the conclusion of the trial, the magistrate recommended that Charles be designated as the sole residential parent and legal custodian of H.N. The magistrate also recommended a division of marital property between Aja and Charles, and she recommended that Aja make regular child-support payments to Charles.

**{¶4}** Aja objected to the magistrate's decision, but her objections were overruled by the trial judge. She now appeals.

## The Trial Court Had Subject-Matter Jurisdiction to Determine Custody of the Child

**{¶5}** Aja argues first that the trial court lacked subject-matter jurisdiction to award custody of H.N. to Charles because — she claims — only a juvenile court has the authority to make child-custody determinations. She also claims that a juvenile court is the only court that can consider whether a child is at risk of harm. We disagree.

**{¶6}** Domestic-relations courts in Ohio (like the trial court here) are required by statute to make child-custody determinations in divorce cases involving minor children that are born during the marriage. These situations are controlled by R.C. 3109.04(A), which states that "[in] any divorce . . . proceeding," the trial court must "allocate the parental rights and responsibilities for the care of the minor children of the marriage."

**{¶7}** When — under R.C. 3109.04(A) — a trial court "mak[es] the allocation of the parental rights and responsibilities for the care of the children . . . the court shall take into account that which would be in the best interest of the children." R.C. 3109.04(B)(1).

**{¶8}** And in making that best-interest determination, "the court shall consider all relevant factors, including, but not limited to . . . [t]he mental and physical health of all persons involved in the situation." R.C. 3109.04(F)(1)(e).

**{¶9}** In short, the trial court here was required by statute to determine Aja and Charles's rights and responsibilities for the care of H.N., and — in making that determination — it was required to consider whether H.N. might be at risk of harm while living with either parent.

**{¶10}** Aja insists, though, that a different statute — R.C. 2151.23 — deprives domestic-relations courts of any authority to make child-custody determinations. That provision of the Revised Code, which controls the jurisdiction of Ohio's juvenile courts, states that juvenile courts have "exclusive original jurisdiction" over cases involving "any child who on or about the date specified in the complaint, indictment, or information is alleged to . . . be a[n] . . . abused, neglected, or dependent child." R.C. 2151.23(A)(1).

**{¶11}** The case before the trial court was not an abuse, neglect, or dependency action involving allegations in a complaint, indictment, or information. The case was, rather, a divorce action brought under Chapter 3105 of the Revised Code. The trial court, then, "ha[d] full equitable powers and *jurisdiction* appropriate to the determination of all domestic relations matters." R.C. 3105.011(A). (Emphasis added.) "All domestic relations matters" includes the underlying divorce action here. *See* R.C. 3105.011(B)(1); R.C. 2301.03(EE).

**{¶12}** The jurisdictional statute for abuse, neglect, and dependency cases in juvenile court does not affect the jurisdiction of a domestic-relations court in a divorce action. Under R.C. 3109.04, the trial court was empowered to make a custody determination based on H.N.'s best interests. Aja's first assignment of error is overruled.

## Ohio's Focus Solely on the Best Interest of the Child in Divorce Cases is Constitutional

{¶13} Aja next argues that the best-interest-of-the-child standard that is used to determine child custody in divorce actions between two parents unconstitutionally infringes on her parental rights because it does not first require a threshold finding of parental unfitness. We disagree.

{¶14} As explained above, a trial court must determine in divorce cases the custody arrangements for the children of the marriage, and the court must be guided by the best interest of the child or children in making those arrangements. The best interest of the child, then, is the only consideration that a trial court weighs to determine custody in divorce cases when the divorcing parties are the child's parents. This is different from — for example — permanent-custody cases brought under R.C. 2151.413, where the court must first determine, by clear and convincing evidence, that the parent of the child is unfit before a best-interest-of-the-child analysis can occur.

{¶15} The underlying action here was a divorce, so the trial court was not required to find that either parent was unfit before the court considered H.N.'s best interest. Aja and Charles are H.N.'s parents, and therefore "are on an equal footing before the law." *In re Perales*, 52 Ohio St.2d 89, 96 (1977). *See also* R.C. 3109.03 ("[w]hen husband and wife are . . . divorced, and the question as to the parental rights and responsibilities for the care of their children . . . is brought before a court . . . they shall stand upon an equality as to the parental rights and responsibilities"). When — as here — the divorcing parties are the child's parents, "a finding of unsuitability would not be appropriate and the welfare of the child [is] the only consideration before the court." *Perales* at 96.

**{¶16}** We are unpersuaded by Aja's arguments to the contrary. She draws our attention to a line of cases in which the U.S. Supreme Court established a requirement that, before a parent's custodial rights over a child can be altered, there sometimes must be a threshold finding of parental unfitness. These cases, however, involve conflicts between the rights of parents and nonparents. In, for example, *Stanley v. Illinois*, the Court struck down an Illinois law that presumed that unwed fathers were unfit to raise children upon the death of the mother. 405 U.S. 645, 659 (1972). Under that law, the "children of unmarried fathers . . . [were] declared dependent children without a hearing on parental fitness." *Id*. at 658. The Court — noting the "essential" interest of a parent "to conceive and to raise one's children," *id*. at 651 — found the state law unconstitutional because it allowed unwed fathers to lose custody of their children "without a hearing on parental fitness." *Id*. at 658.

**{¶17}** Later, in *Troxel v. Granville*, the Court struck down a Washington statute that allowed any person — including nonparents — to obtain a court order granting visitation rights over a child whenever visitation was in the best interest of the child. 530 U.S. 57, 67 (2000). Recognizing that "the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by this Court," *id*. at 65, the Court found the statute unconstitutional because "so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to" involve itself in the child-custody decisions of the parent. *Id*. at 68.

**{¶18}** To be sure, these cases recognize that, as between a parent and a nonparent, the fitness of a parent must be considered before that parent's custodial rights

over their child can be changed. *Stanley* and *Troxel*, however, are not implicated here because the conflict over H.N.'s custody involves a dispute between his two parents. Charles — as H.N.'s father — is on equal legal footing with Aja. The parental-unfitness inquiry was therefore inapplicable, and the trial court properly focused solely on H.N.'s best interest when determining the child-custody arrangement. *See Perales*, 52 Ohio St.2d at 98 ("The welfare of the child is . . . the only interest . . . in an R.C. 3109.04 divorce custody action between parents").

{¶19} Aja's second assignment of error is overruled.

## Ohio's Property-Division Statute is Constitutional

{¶20} In her final assignment of error, Aja argues that Ohio's property-division-upon-divorce statute, R.C. 3105.171, violates the Takings Clause, the Equal Protection Clause, and the Contract Clause. We disagree.

{¶21} The Takings Clause is not implicated by R.C. 3105.171. That clause, of course, prohibits the taking of private property by the government for public use without just compensation. U.S. Const., amend. V. *See also* Ohio Const. art. I, § 19. A division-of-property judgment under R.C. 3105.171 does not involve the acquisition of any property by the government. The marital property at issue in this case now belongs to one party or the other. The government has taken none of it.

{¶22} Nor does a division-of-property judgment under R.C. 3105.171 violate the Equal Protection Clause. To be sure, R.C. 3105.171 treats people differently: it subjects divorcing individuals to potential liabilities that non-divorcing individuals do not face. Yet a law that treats people differently based on their divorcing status is subject to only rational-basis review because it does not "'implicate a fundamental right or a suspect

classification[.]'" *Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, 2010-Ohio-4908, ¶ 18, quoting *State v. Williams*, 2010-Ohio-2453, ¶ 39. A law that is reviewed under rational basis does not violate the Equal Protection Clause "if 'there is a plausible policy reason for the classification.'" *State v. Noling*, 2016-Ohio-8252, ¶ 20, quoting *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992). Under rational-basis review, Aja "'bears the burden to negate every conceivable basis that might support the legislation.'" *Cordray* at ¶ 20, quoting *Columbia Gas Transm. Corp. v. Levin*, 2008-Ohio-511, ¶ 91. Aja has not done that here, nor could she: the state has an interest in ensuring the equitable division of property between spouses who divorce. *See Gross v. Gross*, 11 Ohio St.3d 99, 109 (1984) (emphasizing "the underlying state interest in the welfare of the divorced spouse").

{¶23} Aja's contention that R.C. 3105.171 violates the Contract Clause also falls short. The Contract Clauses of the U.S. and Ohio Constitutions prohibit, in certain circumstances, the enactment of laws that impair *existing* contracts. *See Energy Reserves Group, Inc. v. Kansas Power and Light Co.*, 459 U.S. 400, 411–413 (1983); *Burnett v. Motorists Mut. Ins. Co.*, 2008-Ohio-4984, ¶ 38 (11th Dist.). "The threshold inquiry is 'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.'" *Energy Reserves Group* at 411, quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978). R.C. 3105.171 is not an impairment of the contractual relationship at issue here — Aja's marriage to Charles — because that marriage occurred years after R.C. 3105.171 first went into effect.

{¶24} We see no constitutional defects in R.C. 3105.171, and we conclude that the trial court did not err in applying that statute in the divorce action here. Aja's final assignment of error is overruled.

{¶25} For the reasons stated above, the judgment of the Delaware County Court of Common Pleas, Domestic-Relations Division, is affirmed. Costs are to be paid by appellant Aja Norman.

{¶26} We also deny Aja Norman's August 11, 2025 request for a stay and injunction.

By: Gormley, J.;

Baldwin, P.J. and

Popham, J. concur.